## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) TONKAWA TRIBE OF INDIANS<br>OF OKLAHOMA<br><br>                         Plaintiff,<br>v.<br><br>(1) Dirk KEMPTHORNE, Secretary of the Interior,<br>(2) Ross O. SWIMMER, Special Trustee Office of<br>      Special Trustee for American Indians, and<br>(3) Henry PAULSON, Secretary of the Treasury,<br><br>                         Defendants. | )<br>)<br>)<br>)<br>) No. 06-CV-01435-F<br>)<br>) Judge Stephen P. Friot<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
## TO DEFENDANTS' MOTION TO DISMISS

*s/ Kennis M. Bellmard, II*
Kennis M. Bellmard, II, OBA #13965
David Pomeroy, OBA #7209
Michael D. McMahan, OBA #17317
Jennifer Henshaw McBee, OBA #19170
ANDREWS DAVIS
A PROFESSIONAL CORPORATION
ATTORNEYS AND COUNSELLORS AT LAW
100 North Broadway Avenue, Suite 3300
Oklahoma City, OK 73102
Telephone: (405) 272.9241
Fax: (405) 235.8786
www.andrewsdavis.com
ATTORNEYS FOR PLAINTIFF
TONKAWA TRIBE OF OKLAHOMA

DATED: November 17, 2008

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES**.........................................................................................iii

**I. PRELIMINARY STATEMENT** ................................................................. 1

**II. STANDARD OF REVIEW AND CANONS OF CONSTRUCTION**..................... 3

    A. The Standard of Review is Construed Against Defendants ..................................... 3

    B. Questions of Law are Construed in Favor of the Tonkawa ...................................... 4

    C. The Court Must Deny the Motion to Dismiss ........................................................... 5

**III. SUMMARY OF ARGUMENTS**............................................................................ 5

    A. This Court Has Jurisdiction ...................................................................................... 6

    B. Defendants' Arguments Do Not Support Dismissal.................................................. 7

        i. Defendants' Reliance on Reconciliation Reports is Misplaced ............................ 8

        ii. Congress Has Acknowledged Problems with the TRP Reports .......................... 9

        iii. Defendants' Urge Misapplication of SUWA Decision.................................... 11

    C. The Court Must Deny the Motion to Dismiss ....................................................... 12

**IV. THIS COURT HAS JURISDICTION** .................................................................. 12

    A. This Court Has Subject Matter Jurisdiction .......................................................... 13

    B. The United States has Waived Sovereign Immunity............................................... 13

    C. The Tonkawa Adequately State a Cause of Action ................................................ 18

**V. THE TONKAWA ARE ENTITLED TO A COMPLETE ACCOUNTING**......... 22

    A. The Tonkawa Seek a Complete Accounting. ......................................................... 22

    B. Defendants' Duty to Account Predates and Transcends the 1994 Act.................... 23

    C. This Court has Jurisdiction to Order a Complete Accounting................................. 26

D. A Complete Accounting May Lead to Additional Equitable Relief ...................... 27

E. This Court Can Award Restitution.......................................................................... 29

F. Section 1500 Considerations Do Not Apply ........................................................... 33

**VI. TONKAWA ALLEGATIONS SUPPORT NUMEROUS LEGAL THEORIES** 33

A. SUWA Does Not Defeat APA 5 U.S.C. § 706(1) Claims........................................ 34

   i. The Court may Order an Accounting under § 706(1) ........................................... 34

   ii. Cobell VI reaffirms that the Duty to Account Predates 1994 Act ...................... 37

B. Tonkawa Adequately Alleged 5 U.S.C. § 706(2) Jurisdiction ................................ 38

C. Tonkawa May Invoke § 706(1) and § 706(2) Together .......................................... 39

D. Tonkawa sufficiently allege valid non-APA claims................................................ 39

E. Tucker Act and Indian Tucker Act Establish Jurisdiction ....................................... 40

**VII. TRIBE'S PRE-1946 CLAIMS ARE NOT TIME BARRED** ............................... 42

A. Congress Deferred the Accrual of the Tribe's Pre-1946 Claims ............................. 43

B. The Tribal Trust Fund Accounting Statutes Preserve Pre-1946 Claims ................. 47

C. Section 12 of ICCA Does Not Bar Pre-1946 Claims ............................................. 48

**VIII. THE TONKAWA ARE ENTITLED TO AN ACCOUNTING OF THEIR NONMONETARY ASSETS**.................................................................................. 50

A. An Adequate Accounting Must Include Non-Monetary Assets.............................. 51

B. The Tonkawa Were Not Required to Exhaust Administrative Remedies ............... 52

**IX. CONCLUSION**........................................................................................................ 56

# TABLE OF AUTHORITIES

## CASES

*Aetna Cas. & Sur. Co. v. United States*, 71 F.3d 475 (2d Cir. 1995) ................................ 28

*Ak-Chin Indian Community v. United States*, 80 Fed. Cl. 305 (Fed. Cl. 2008) ............... 33

*Alaska Pacific Fisheries Co. v. U.S.*, 248 U.S. 78 (1918) .............................................. 45

*American Community. Bankers v. FDIC*, 200 F.3d 822 (D.C.Cir. 2000) ........................ 32

*Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 107 S.Ct. 1396 (1987) ............... 5

*Andrus v. Glover Construction Co.*, 446 U.S. 608 (1980) ................................................. 5

*Anselmo v. King*, 902 F. Supp. 273 (D.D.C. 1995) ........................................................ 27

*Assiniboine & Sioux Tribes of Fort Peck Indian Reservation v. Bd. of Oil & Gas Conservation*, 792 F.2d 782 (9th Cir. 1986) ............................................................ 14

*Avocados Plus Inc. v. Veneman*, 370 F.3d 1243 (D.C. Cir. 2004) ................................... 56

*Beckett v. Air Line Pilots Ass'n*, 995 F.2d 280 (D.C. Cir. 1993) ..................................... 20

*Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955 (2007) ...................................................... 38

*Bowen v. Massachusetts*, 487 U.S. 879 (1988) ............................................... 27, 28, 29, 30

*Bryan v. Itasca County*, 426 U.S. 373 (1976) .................................................................. 4

*Chamber of Commerce of the U.S. v. Reich*, 74 F.3d 1322 (D.C. Cir. 1996) .................. 14

*Cherokee Nation v. Georgia*, 30 U.S. (5 Pet.) 1 ........................................................ 10, 21

*Chippewa Cree Tribe of the Rocky Boy's Reservation v. Norton*, Case No. 02-276 (RCL), Memorandum and Order of July 23, 2002 (D.D.C. 2002) ................................... 24

*Chippewa Cree Tribe. v. United States*, 69 Fed. Cl. 639 (Fed. Cl. 2006) ........................ 47

*Choctaw Nation v. United States*, 119 U.S. 1 (1886) ...................................................... 10

*Choctaw Nation v. United States*, 318 U.S. 423 (1943) .................................................... 4

*City of Houston v. Dep't of Hous. & Urban Dev.*, 24 F.3d 1421 (D.C. Cir. 1994) 31, 32, 33

*City of Los Angeles v. Adams*, 556 F.2d 40 (D.C. Cir. 1977)............................................. 49

*Clark v. Library of Congress*, 750 F.2d 89 (D.C. Cir. 1984) ........................................... 14

*Clifford v. United States*, 136 F.3d 144 (D.C. Cir. 1998)............................................ 51, 53

*Cobell v. Babbitt*, 30 F. Supp.2d 24 (D.D.C. 1998) .................................................. 14

*Cobell v. Kempthorne*, 532 F.Supp.2d 37 (D.D.C. 2008) .................................................. 39

*Cobell v. Norton*, 240 F.3d 1081 (D.C. Cir. 2001) ("Cobell VI")............................. passim

*Cobell v. Norton*, 260 F. Supp.2d 98 (D.D.C. 2003).......................................................... 57

*Cobell v. Norton*, 391 F.3d 251 258 (D.C. Cir. 2004)....................................................... 52

*Coit Independence Joint Venture v. Fed. Sav. & Loan Ins. Corp.*, 489 U.S. 561 (1989) . 54

*Colautti v. Franklin*, 439 U.S. 379, 99 S. Ct. 675 (1979) .................................................. 17

*Confederated Salish and Kootenai Tribes v. Namen*, 665 F.2d 951 (9th Cir. 1982) ........ 17

*Confederated Tribes of the Chehalis Indian Reservation v. Washington*,
    96 F.3d 34, 342 (9th Cir. 1996).............................................................................. 17

*Conley v. Gibson*, 355 U.S. 41 (1957)............................................................................... 38

*Coosewoon v. Meridian Oil Co.*, 25 F.3d 920 (10th Cir. 1994)........................................ 55

*Crocker v. Piedmont Aviation, Inc.*, 49 F.3d 735 (D.C. Cir. 1995)................................... 30

*Crowley Caribbean Transp., Inc. v. United States*, 865 F. 2d 1281 (D.C. Cir. 1989)...... 46

*Davis v. United States*, 199 F. Supp.2d 1164 (W.D. Okla. 2002).................................... 55

*Energy Transp. Group, Inc. v. Skinner*, 752 F. Supp. 1, 10 (D. D.C. 1990),
    aff'd on other grounds, 956 F.2d 1206 (D.C. Cir. 1992) ....................................... 46

*Esch v. Yeutter*, 876 F.2d 976 (D.C. Cir. 1989) ............................................................... 27

*Escondido Mutual Water Co v. La Jolla Band of Mission Indians*, 466 U.S. 765 (1984).. 5

*Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002) ........................... 30

*Greene v. United States*, 376 U.S. 149 (1964) ................................................................. 54

*Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999) . 26

*Harrison v. Emerald Outdoor Adver., LLC* (*In re Emerald Outdoor Adver., LLC*), 444 F.3d 1077 (9th Cir. 2006).............................................................................. 55

*Hecht Co. v. Bowles*, 321 U.S. 321 (1944)...................................................................... 26

*Hill v. Republic of Iraq*, No. Civ. 4.1:99CV03346TP, 2003 WL 21057173 (D. D.C. Mar. 11, 2003), rev'd on other grounds, 328 F.3d 680 (D.C. Cir. 2003)........... 46

*Hishon v. King & Spalding*, 467 U.S. 69, 104 S.Ct. 2229 (1984)....................................... 3

*Ibrahim v. District of Columbia*, 539 F. Supp.2d 143 (D.D.C. 2008)........................... 4, 38

*In re Dyke*, 943 F.2d 1435 (5th Cir.1991) ...................................................................... 17

*In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399 (9th Cir. 1996).................................................. 3

*ITT World Commc'ns Inc. v. Fed. Commc'ns Comm'n*, 725 F.2d 732 (D.C. Cir. 1984) . 46

*Jicarilla Apache Tribe v. Supron Energy Corp.*, 728 F.2d 1555 (10th Cir. 1984) ........... 37

*Joint Tribal Council of Passamaquoddy Tribe v. Morton*, 388 F. Supp. 649 (D.C. Me. 1975), aff'd, 528 F.2d 370 (1st Cir. 1975) ............................................................. 41

*Joint Tribal Council of Passamaquoddy Tribe v. Morton*, 528 F. 2d 370 (1st Cir. 1975).. 2

*Jones v. G.E. Co.*, 87 F.3d 209, (7th Cir. 1996) ................................................................ 3

*Kansas City v. Federal Pacific Electric Co.*, 310 F.2d 271, (8th Cir.), cert. den., 371 U.S. 912, 83 S.Ct. 256 (1962) ...................................................... 16

*Klamath & Modoc Tribes & Yahooskin Band of Snake Indians v. U. S.*, 174 Ct. Cl. 483 (1966).............................................................................................. 23

*Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682 (1949) ......................... 27

*Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993) ............................................................................................... 4

*Lujan v. National Wildlife Federation*, 497 U.S. 871 (1990)........................................... 35

*M.K. v. Tenet*, 99 F. Supp.2d 12 (D.D.C. 2000)............................................................. 28

*Manchester Band of Pomo Indians, Inc. v. United States*, 363 F. Supp. 1238 (N.D. Cal. 1973)....................................................................................................................... 18

*McClanahan v. State Tax Comm'n*, 411 U.S. 164 (1973).................................................. 5

*Menominee Tribe v. United States*, 101 Ct. Cl. 10 (1944) ................................................. 3

*Minn. Chippewa Tribe v. United States*, 11 Cl. Ct. 534 (Cl. Ct. 1987)............................ 48

*Montana v. Blackfeet Tribe of Indians*, 471 U.S. 759 (1985) ............................................ 4

*Mountain States Tel. & Tel. Co. v. Pueblo of Santa Ana*, 472 U.S. 237 (1985) .............. 17

*Murphy Exploration & Prod. Co. v. U.S. Dep't of the Interior*, 252 F.3d 473
    (D.C. Cir. 2001)........................................................................................... 48

*Nat'l Labor Relations Bd. v. Pueblo of San Juan*¸ 276 F.3d 1186 (10th Cir. 2002)........... 4

*Navajo Tribe of Indians v. New Mexico,* 809 F.2d 1455 (10th Cir. 1987)................. 45, 49

*Oregon Dept. of Fish & Wildlife v. Klamath*, 473 U.S. 753 (1985)................................... 5

*Oregon Natural Desert Ass'n v. Taylor*, 2005 WL 106599 (D. Or. 2005) ....................... 39

*Osage Nation v. United States,* 57 Fed. Cl. 392 (Fed. Cl. 2003) ...................................... 47

*Presidential Gardens Assocs. v. United States*, 175 F.3d 132 (2d Cir. 1999) ................. 12

*Puyallup Indian Tribe V. Port of Tacoma*, 717 F.2d 1251 (9th Cir. 1983 ........................ 17

*Rainbolt v. Johnson*, 669 F.2d 767 (D.C. Cir. 1981)........................................................ 29

*Ramah Navajo Chapter v. Lujan*, 112 F.3d 1455 (10th Cir. 1997).................................. 26

*Randolph-Sheppard Vendors of Am. v. Weinberger*, 795 F.2d 90 (D.C. Cir. 1986)... 54, 56

*Riverkeeper, Inc. v. U.S. Environmental Protection Agency,*
    514 F. Supp.2d 265 (S.D.N.Y. 2007)..................................................... 39

*Robertson v. Seattle Audubon Soc'y*, 503 U.S. 429 (1992)............................................. 49

*Rosenak v. Poller*, 290 F.2d 748 (D.C. Cir. 1961) ......................................................... 23

*Schnapper v. Foley*, 667 F.2d 102 (D.C. Cir. 1981) ....................................................... 14

*Sea-Land Serv., Inc. v. Alaska R.R.*, 659 F.2d 243 (D.C. Cir. 1981) ............................. 14

*Sea-Land Serv., Inc. v. Dep't of Transp.*, 137 F.3d 640 (D.C. Cir. 1998)........................ 46

*Seminole Nation v. U.S.*, 316 U.S. 268 (1942) ...................................................... 3, 10, 41

*Shapiro v. United States*, 335 U.S. 1, 68 S. Ct. 1375 (1948) .......................................... 16

*Shoshone Indian Tribe v. United States*, 364 F.3d 1339 (Fed. Cir. 2004),
    cert. den., 544 U.S. 973 (2005) ........................................................ 47, 48

*Shoshone Indian Tribe v. United States*, 71 Fed. Cl. 172 (Fed. Cl. 2006) .................. 47, 50

*Sioux Tribe v. United States,* 500 F.2d 458 (Ct. Cl. 1974) ................................. 48

*Smith v. Ill. Bell Tel. Co.*, 270 U.S. 587 (1926) ....................................... 54

*South Carolina v. Catawba Indian Tribe*, 476 U.S. 498, 106 S. Ct. 2039 (1986) .......... 4, 5

*Southern Utah Wilderness Alliance v. Norton*, 542 U.S. 55 (2004) .... 11, 34, 35, 36, 37, 52

*Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111 (D.C. Cir. 2000) ................... 4

*Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1 (1971) ................. 26

*Taylor v. FDIC*, 132 F.3d 753 (D.C. Cir. 1997) ....................................... 4

*Te-Moak Bands of W. Shoshone Indians v. United States*, 948 F.2d 1258
    (Fed. Cir. 1991) ................................................................ 48

*Tenn. ex rel Leech v. Dole*, 749 F.2d 331 (6th Cir. 1984) ............................ 41

*Tohono O'Odham Nation v. United States*, 79 Fed. Cl. 645 (Fed. Cl. 2007) ................. 33

*Transohio Sav. Bank v.Director, Office of Thrift Supervision*, 967 F.2d 598
    (D.C.Cir.1992) ................................................................. 41,42

*Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178 (D.C. Cir. 2006) .................................. 14

*Tulee v. Washington*, 315 U.S. 681 (1942) ............................................ 10

*United Am., Inc. v. N.B.C.-U.S.A. Hous., Inc. Twenty Seven*,
    400 F. Supp.2d 59 (D.D.C. 2005) ....................................... 12

*United States v. Creek Nation*, 295 U.S. 103 (1935) .......................................... 10

*United States v. Kagama*, 118 U.S. 375 (1886) .......................................... 10, 21

*United States v. Mason*, 412 U.S. 391 (1973) ...................................... 3

*United States v. Minor*, 228 F.3d 352, 355 (4th Cir. 2000) ............................. 32

*United States v. Mitchell*, 463 U.S. 206 (1983) ........................... 2, 18, 19, 20

*United States v. Pelican*, 232 U.S. 442 (1914) ............................................. 10

*United States v. Smith*, 811 F. Supp. 646 (S.D. Ala. 1992) ................................................. 44

*United States v. White Mountain Apache Tribe*, 537 U.S. 465,
    123 S. Ct. 1126 (2003) ............................................................................ 19, 20, 21

*United States v. Will,* 449 U.S. 200 (1980) ...................................................... 49

*Vill. of Brookfield v. Pentis*, 101 F.2d 516 (7th Cir. 1939) ............................... 18

*Wolfchild v. United States*, 62 Fed. Cl. 521 (Fed. Cl. 2004) ............................. 47

*Wolfchild v. United States*, 72 Fed. Cl. 511 (Fed. Cl. 2006) ............................. 47

## CONSTITUTIONS

U.S. CONST. art. 1, § 3, cl. 8 .................................................................... 1, 6, 13

## TREATIES

Treaty with the Comanche, Aionai, Anadarko, Caddo,  May 15, 1846, 9 Stat., 844,
    Proclamation, March 8, 1847 .................................................................... 2

## STATUTES

1 Stat. 137, 138 (July 22, 1790) ........................................................................ 2

5 U.S.C. § 702 ................................................................................... passim

5 U.S.C. §§706(1), 706(2) ................................................................... passim

25 U.S.C. § 4011 .............................................................................................. 7

25 U.S.C. § 4044 ...................................................................... 8, 16, 25, 35, 36

28 U.S.C. §§1331, 1332 .......................................................... 6, 13, 22, 41

28 U.S.C. §1361 ............................................................................................... 6

28 U.S.C. §§1391(b)(2), 1391(e)(2) ............................................................... 6

28 U.S.C. § 1491 .......................................................................................... 40

28 U.S.C. § 1500 ................................................................................................ 33

28 U.S.C. § 1505 ................................................................................................ 40

28 U.S.C. § 2501 ........................................................................................ 44, 47


## PUBLIC LAWS

Pub. L. No. 79-726, 60 Stat. 1049 ................................................................... 45

Pub. L. No. 101-512, 104 Stat. 1915 (1990) ....................................... 6, 13, 43

Pub. L. No. 102-154, 105 Stat. 990 (1991) ......................................... 6, 13, 43

Pub. L. No. 102-381, 106 Stat. 1374 (1992) ....................................... 6, 13, 43

Pub. L. No. 103-138, 107 Stat. 1379 (1993) ....................................... 6, 13, 43

Pub. L. No. 103-332, 108 Stat. 2499 (1994) ....................................... 6, 13, 43

Pub. L. No. 104-134, 110 Stat. 1321 (1996) ....................................... 6, 13, 43

Pub. L. No. 104-208, 110 Stat. 3009 (1996) ....................................... 6, 13, 43

Pub. L. No. 105-277, 112 Stat. 2681 (1998) ....................................... 6, 13, 43

Pub. L. No. 105-83, 111 Stat. 1543 (1997) ......................................... 6, 13, 43

Pub. L. No. 106-113, 113 Stat. 1501 (1999) ....................................... 6, 13, 43

Pub. L. No. 106-291, 114 Stat. 922 (2000) ......................................... 6, 13, 43

Pub. L. No. 107-63, 115 Stat. 414 (2001) ........................................... 6, 13, 43

Pub. L. No. 107-153, 116 Stat. 79 ................................................................... 16

Pub. L. No. 108-108, 117 Stat. 1241 (2003) ....................................... 6, 13, 43

Pub. L. No. 108-447, 118 Stat. 2809 (2004) ....................................... 6, 13, 43

Pub. L. No. 108-7, 117 Stat. 11 (2003) ............................................... 6, 13, 43

Pub. L. No. 109-54, 119 Stat. 499 (2005) ........................................... 6, 13, 43

Pub. L. No. 109-158, 119 Stat. 2954 ............................................................... 16

Pub. L. No. 110-161, 121 Stat. 1844 (2007) ................................................. 6, 13, 31, 44, 45


## FEDERAL REGULATIONS

25 C.F.R. § 150.1 ....................................................................................................... 54, 55

25 C.F.R. § 150.8 ....................................................................................................... 54, 56


## CONGRESSIONAL MATERIALS

S. REP. NO. 107-138 (2002) ............................................... 7, 8, 9, 17, 31, 34, 44

148 CONG. REC. H704 (daily ed. March 6, 2002) ....................................................... 9, 17

American Indian Policy Review Commission of the Congress of the United States,
    Final Report, May 17, 1977, vol. 1 ................................................................. passim


## OTHER AUTHORITIES

1A C.J.S. Accounting Section 6 ............................................................................. 51

76 Am. Jur.2d, Trusts § 378 .................................................................................. 51

76 Am. Jur.2d, Trusts § 506 .................................................................................. 29

Black's Law Dictionary (8th ed. 2004) ............................................................... 51

Charles A. Wright, Arthur R. Miller & Edward H. Cooper,
    Federal Practice & Procedure § 4101 at 319 (1988) .................................... 42

George T. Bogert, The Law of Trusts & Trustees § 963 (2d ed. Rev. & 3d ed. 2007) ..... 23

Restatement (Second) of Trusts § 173 ("Duty to Furnish Information") (1959) ........ 51, 53

William F. Fratcher, 3 Scott on Trusts § 199, (4th ed. 1988) .......................... 18, 26, 29, 52

Plaintiff, Tonkawa Tribe of Oklahoma ("Tonkawa" or "Tribe"), responds to the Motion to Dismiss (Dkt #40) filed by the Defendants. As shown in the Tribe's Complaint (Dkt #1) and the Tribe's Amended Complaint (Dkt #18), jurisdiction and venue properly lies with this Court to require Defendants (referred to herein collectively as the "United States" or "Defendants") to provide Tribe with an accounting of all Tonkawa trust funds and assets as mandated by statute and other applicable law, and to award Tribe other related relief. In opposition to Defendants' Motion to Dismiss, the Tonkawa state as follows:

## I. PRELIMINARY STATEMENT

*The Federal trust responsibility to American Indians is one of the most important as well as most misunderstood concepts in Federal-Indian relations.[1]*

The Tonkawa occupy the Indian country within their former reservation in Kay County, Oklahoma. The Tonkawa are the beneficial owners of land and natural resources, title to which is held in trust by the United States.

The history of the trust relationship between the United States and tribal governments extends back to the foundation of the Republic, beginning with the Indian Commerce Clause of the Constitution of the United States.[2] Although straightforward in concept, the legal contours of the relationship are somewhat

---

[1] American Indian Policy Review Commission of the Congress of the United States, Final Report, May 17, 1977, vol. 1, page 125.

[2] "The Congress shall have power . . . To regulate commerce with foreign nations, and among the several states, and with the Indian tribes." U.S. CONST. art. I, § 3, cl. 8.

complex given the multiple statutes, regulations, court decisions and federal policy changes that have impacted the relationship.

Congress moved to assume control over Indian trade soon after the Constitution was ratified, beginning with *An Act to Regulate Trade and Intercourse With the Indian Tribes*.[3] This was the first of the so-called "Indian Intercourse Acts" under which Congress established federal control over the disposition of tribal lands, applied laws of the United States to tribal lands, established trading outposts and instituted a licensing process for individuals who wished to trade with Indians. Insofar as preservation of tribal lands was concerned, the Act created a trust relationship.[4]

In 1846, the United States assumed more specific fiduciary obligations for the Tonkawa pursuant to the Treaty with the Comanche, Aionai, Anadarko, Caddo (May 15, 1846, 9 Stat., 844; Proclamation Mar. 8, 1847). This trusteeship has continued through numerous subsequent acts, such as holding land in trust for the tribe.[5] As trustee, the United States is bound to administer and preserve Tonkawa trust assets with the greatest skill and care, "judged by the most exacting fiduciary

---

[3] 1 Stat. 137, 138 (July 22, 1790).

[4] *Joint Tribal Council of Passamaquoddy Tribe v. Morton*, 528 F.2d 370, 379 (1st Cir. 1975).

[5] *United States v. Mitchell*, 463 U.S. 206, 255 (1983); *Cobell v. Norton*, 240 F.3d 1081(D.C. Cir. 2001).

standards.''[6] The federal government's performance is judged by common-law trust principles.[7]

To fulfill the federal trust obligation, Congress charged the above-named Defendants with the responsibility to administer and manage Tonkawa trust assets. As described in the Tribe's Amended Complaint, and as will be discussed below, Defendants have breached their trust responsibilities to the Tonkawa.

## II. STANDARD OF REVIEW AND CANONS OF CONSTRUCTION

The Court must consider the Defendants' Motion to Dismiss in light of the well-known standard of review applied to dismissal motions and the body of case law known as the Indian Canons of Construction. In light of these standards, the Court must deny the Motion to Dismiss.

### A. The Standard of Review is Construed Against Defendants

When evaluating Defendants' motion to dismiss, this Court must construe the factual allegations in the Tribe's Amended Complaint in the light most favorable to the Tonkawa.[8] **Only if** no possible construction of the alleged facts will entitle the Tonkawa to relief may the court grant Defendants' motion.[9] If the Tonkawa allege facts that support **any legal theory** that entitles the Tonkawa to

---

[6] *Seminole Nation v. United States*, 316 U.S. 286, 296 (1942).

[7] *See United States v. Mason*, 412 U.S. 391 (1973); *Menominee Tribe v. United States*, 101 Ct. Cl. 10 (1944).

[8] *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1403 (9th Cir. 1996); *Jones v. G.E. Co.*, 87 F.3d 209, 211 (7th Cir. 1996).

[9] *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232 (1984).

some relief, the Court must deny the Defendants' motion. The Court must treat all factual allegations in the Tribe's Amended Complaint as true and draw all reasonable inferences **in the Tribe's favor.**[10]

### B. Questions of Law are Construed in Favor of the Tonkawa

Under the Indian Canons of Construction, "statutes are to be construed liberally in favor of Indians, with ambiguous provisions interpreted to their benefit."[11] The canon further provides "for a broad construction when the issue is whether Indian rights are reserved or established, and for a narrow construction when Indian rights are to be abrogated or limited."[12]

Accordingly, all of the statutes and other law cited by both the Tonkawa and the Defendants **must be interpreted broadly in favor of the Tonkawa.**

Additionally, treaties and federal agreements with tribes should be liberally construed to favor Indians.[13] Ambiguous expressions in treaties and statutes are

---

[10] *See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *Sparrow v. United Air Lines, Inc.,* 216 F.3d 1111, 1113 (D.C. Cir. 2000); *Ibrahim v. District of Columbia*, 539 F. Supp.2d 143, 147 (D.D.C. 2008) ("On a motion to dismiss, I must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff.") (*citing Taylor v. FDIC*, 132 F.3d 753, 761 (D.C. Cir. 1997)).

[11] *Montana v. Blackfeet Tribe of Indians*, 471 U.S. 759, 766 (1985); *see also South Carolina v. Catawba Indian Tribe, Inc.*, 476 U.S. 498, 506 (1986) ("[D]oubtful expressions of legislative intent must be resolved in favor of the Indians").

[12] *Nat'l Labor Relations Bd. v. Pueblo of San Juan¸* 276 F.3d 1186, 1194 (10th Cir. 2002) (citing *Bryan v. Itasca County*, 426 U.S. 373 (1976)).

[13] *Choctaw Nation v. United States*, 318 U.S. 423, 431-432 (1943).

resolved in favor of the tribes.[14] This canon cannot be used to thwart congressional intent by creating ambiguities that do not exist.[15]

## C. The Court Must Deny the Motion to Dismiss

The Defendants basically ask the Court to conclude that the government has satisfied its statutory and common-law obligations to the Tonkawa. To grant the Motion to Dismiss would be to prematurely resolve the factual and legal disputes at the heart of this litigation against the Tonkawa. Such a ruling would ignore the well established standard of review and the Indian Canons of Construction. Thus the Court must deny the Motion to Dismiss.

## III. SUMMARY OF ARGUMENTS

> *With respect to services related to protection and enhancement of trust assets, the United States should be held to the standards of a common law trustee . . . and it should be subject to liability in Federal courts for violation of this trust obligation. In the absence of such a remedy, there is no incentive for the trustee to perform its obligation in a diligent manner.[16]*

The Defendants' Motion to Dismiss is without merit and is an attempt to distract the Court with arguments irrelevant to this Court's assertion of

---

[14] *McClanahan v. State Tax Comm'n*, 411 U.S. 164, 174 (1973).

[15] *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 107 S.Ct. 1396, 1409, (1987); *South Carolina v. Catawba Indian Tribe*, 476 U.S. 498, 106 S.Ct. 2039, 2044 & n. 16 (1986); *Oregon Dept. of Fish & Wildlife v. Klamath,* 473 U.S. 753, 774 (1985); *Escondido Mutual Water Co v. La Jolla Band of Mission Indians*, 466 U.S. 765, 781 (1984); *Andrus v. Glover Construction Co.*, 446 U.S. 608, 618-619 (1980).

[16] American Indian Policy Review Commission of the Congress of the United States, Final Report, May 17, 1977, vol. 1, page 134.

jurisdiction. The Defendants try to convince the Court to ignore federal statutes, an overwhelming body of case law, and the express will of Congress.

### A. This Court Has Jurisdiction

This Court exercises original jurisdiction over this action under 28 U.S.C. §§ 1331, 1332 and under 28 U.S.C. § 1361 as federal questions, and 5 U.S.C. § 706 for injunctive relief and to compel federal officials to perform mandatory trust responsibilities. Federal question jurisdiction is also drawn from the Indian Commerce Clause and numerous other federal laws governing both the federal-Tribal relationship and specifically addressing the trust accounting issues raised by the Tonkawa.[17] Because the Tonkawa seek equitable and injunctive relief, it is well settled that the United States waived sovereign immunity from suit pursuant to § 702 of the Administrative Procedures Act ("APA").[18] Additionally, venue is proper in this Court under 28 U.S.C. §§ 1391(b)(2), 1391(e)(2).

**Under both the APA and more specific law governing the federal-tribal relationship, this Court has jurisdiction to: (1) determine whether the**

---

[17] U.S. CONST. art. 1, § 3, cl. 8; Pub. L. No. 101-512, 104 Stat. 1915 (1990); Pub. L. No. 102-154, 105 Stat. 990 (1991); Pub. L. 102-381, 106 Stat. 1374 (1992); Pub. L. No. 103-138, 107 Stat. 1379 (1993); Pub. L. No. 103-332, 108 Stat. 2499 (1994); Pub. L. No. 104-134, 110 Stat. 1321 (1996); Pub. L. No. 104-208, 110 Stat. 3009 (1996); Pub. L. No. 105-83, 111 Stat. 1543 (1997); Pub. L. No. 105-277, 112 Stat. 2681 (1998); Pub. L. No. 106-113, 113 Stat. 1501 (1999); Pub. L. No. 106-291, 114 Stat. 922 (2000); Pub. L. No. 107-63, 115 Stat. 414 (2001); Pub. L. No. 108-7, 117 Stat. 11 (2003); Pub. L. No. 108-108, 117 Stat. 1241 (2003); Pub. L. No. 108-447, 118 Stat. 2809 (2004); Pub. L. No. 109-54, 119 Stat. 499 (2005); Pub. L. No. 110-161, 121 Stat. 1844 (2007).

[18] 5 U.S.C. § 702.

**Defendants have provided the Tonkawa with a meaningful accounting that comports with both its obligation as trustee and its statutory mandate, and, if the Defendants have failed to do so; and (2) to direct the Defendants to perform such a meaningful accounting.** If a shortfall is found, this Court also has the jurisdiction to award restitution to the Tonkawa to restore them to the position they would have enjoyed but for the Defendants' negligence and breach of fiduciary obligations.

### B. Defendants' Arguments Do Not Support Dismissal

The status of the United States as trustee for Indian tribes in general, and the Tonkawa in particular, is well established and without dispute.[19] Congress ratified and recognized these longstanding and pre-existing trust responsibilities in the 1994 American Indian Trust Fund Management Reform Act ("1994 Act"), codified at 25 U.S.C. §§ 4001-4061. The 1994 Act requires Defendants to "account for the daily and annual balance of all funds held in trust by the United States for the benefit of an Indian tribe . . . ."[20] and directed Defendants to report to Congress on or before May 31, 1996, whether they had provided to all tribes,

---

[19] "As a function of treaties and the course of dealings between the United States and Indian tribes, the United States holds legal title to lands held in trust for individual Indians as well as Indian tribal governments. The revenues derived from trust lands are also held in trust by the United States for the benefit of individual Indians and tribal governments." S. Rep. 107-138 at 1 (2002).

[20] 25 U.S.C. § 4011.

including the Tonkawa, **"as full and complete accounting as possible of the account holder's funds <u>to the earliest possible date</u>**."[21]

### i. Defendants' Reliance on Reconciliation Reports is Misplaced

The centerpiece of the Defendants' Motion to Dismiss is that in response to the accounting directive in the 1994 Act the government (allegedly[22]) provided the Tonkawa with a Tribal Reconciliation Project Report ("TRP Report") for the period from July 1, 1972 (Fiscal Year 1973), to September 30, 1995 (Fiscal Year 1995).[23]

> The Congress first established an Indian trust fund account reconciliation requirement in the Supplemental Appropriations Act of 1987 (P.L. 100–202) in response to tribal concerns that the Interior Department had not consistently provided them with statements on their account balances, that their trust fund accounts had never been reconciled, and that the Department planned to contract with a third party for the management of trust fund accounts.

S. REP. 107-138 at 2 (2002).

To fulfill their accounting obligations, Defendants employed the now-defunct accounting firm of Arthur Andersen (later prosecuted by the Securities and Exchange Commission for its role in the Enron scandal) to perform a reconciliation of tribal trust accounts. The result of this reconciliation project was the TRP Reports. The Tonkawa dispute whether they ever actually received this

---

[21] 25 U.S.C. § 4044(2)(A) (emphasis added).

[22] Whether or not the Tonkawa actually received this report is disputed.

[23] *See* Motion to Dismiss at 16-17.

report. Accordingly, **any statement in this brief indicating the Tonkawa may have received such a report is merely a recitation of the Defendants' position and is not an admission by the Tonkawa.**

The TRP Reports covered only the period from 1972 through 1995. Translated this means that **from more than 200 years of trust management** for the Tonkawa, the Defendants admit they could account for **only 23 years.** Defendants recite a litany of excuses for their failure to provide a more detailed accounting, including the existence of a deadline and the "state of the records"[24] – records the Defendants as trustee were responsible to maintain.

<u>ii. Congress Has Acknowledged Problems with the TRP Reports</u>

Even Congress has acknowledged that the TRP Reports were inadequate and do not accomplish congressional goals. "It was clear when these reports were sent to Indian tribes in 1996 that they were not a full and accurate reconciling of the tribal accounts."[25] "The U.S. General Accounting Office also reported shortcomings in the Interior Department's reconciliation project."[26]

Thus the heart and soul of the Motion to Dismiss is the ludicrous proposition that the **admitted dereliction of Defendants' trust responsibilities** (*i.e.*, the Defendants' inability to provide an accounting for funds prior to 1972)

---

[24] *Id.* at 17 n. 10.

[25] 148 CONG. REC. H704 (daily ed. March 6, 2002) (statement of Rep. Rahall).

[26] S. REP. NO. 107-138 at 3 (2002), citing FINANCIAL MANAGEMENT: BIA'S TRIBAL TRUST FUND ACCOUNT RECONCILIATION RESULTS (GAO/AIMD–96–63, May 3, 1996).

fulfills federal trust obligations to the Tonkawa, satisfies congressional intent and divests this Court of jurisdiction.[27] Clearly the Defendants fail to appreciate the weight of their obligations, and to provide an "accounting" to the earliest possible date.

Defendants are obligated to administer tribal trust funds with the full care and responsibility of a fiduciary and trustee.

> [T]his Court has recognized the distinctive obligation of trust incumbent upon the Government in its dealings with these dependent and sometimes exploited people . . . . In carrying out its treaty obligations with the Indian tribes, the Government is something more than a mere contracting party . . . . [I]t has charged itself with moral obligations of the highest responsibility and trust. Its conduct, as disclosed in the acts of those who represent it in dealings with the Indians, should therefore be judged by the most exacting fiduciary standards.

*Seminole Nation v. United States, supra*, 316 U.S. at 296-297.[28] In light of this standard and Defendants' excuses, Defendants have clearly failed to live up to their obligations. Even if the Court accepts Defendants' assertions that they provided the TRP Reports, the inability or unwillingness of Defendants to account prior to 1972 demonstrates the precarious status of the Tribe's trust assets and the necessity that litigation proceed.

---

[27] *Id.*

[28] Citing *Cherokee Nation v. Georgia*, 30 U.S. (5 Pet.) 1; *United States v. Kagama,* 118 U.S. 375; *Choctaw Nation v. United States,* 119 U.S. 1 (1886); *United States v. Pelican,* 232 U.S. 442 (1914); *United States v. Creek Nation,* 295 U.S. 103 (1935); *Tulee v. Washington,* 316 U.S. 681 (1942). *See also Cobell v. Norton*, 240 F.3d 1081, 1099 (D.C. Cir. 2001).

### iii. Defendants' Urge Misapplication of *SUWA* Decision

Beginning on Page 11 of the Motion to Dismiss, Defendants embark on a protracted attack on *Cobell VI*, arguing that *Southern Utah Wilderness Alliance v. Norton*,[29] ("*SUWA*") – a case that had **nothing at all to do with trust fund accounting or federal fiduciary obligations to tribes** – prohibits this Court from directing the Defendants to provide an accounting and deprives this Court of jurisdiction. For roughly 16 of 65 pages in the Motion to Dismiss, Defendants try to pound this square peg into a round hole.

In no event could the *SUWA* decision alter the federal government's pre-existing fiduciary duties to the Tonkawa or reduce this Court's authority to direct the Defendants to comply with those obligations or the 1994 Act. This Court may: (1) determine whether Defendants satisfied their statutory and common-law fiduciary accounting obligations to the Tonkawa; and (2) order the Defendants to conduct a meaningful accounting. In order to accept Defendants' arguments regarding the impact of the *SUWA* case, the Court would have to ignore (1) federal statutes establishing and reaffirming the trust responsibility; and (2) an extensive body of case law affirming Defendants' obligation to provide an accounting and fulfill other trust responsibilities.

---

[29] *Southern Utah Wilderness Alliance v. Norton* 301 F.3d 1217 (10th Cir. 2002), rev'd 542 U.S. 55 (2004).

## C. The Court Must Deny the Motion to Dismiss

The Tonkawa have provided the Court multiple jurisdictional grounds to retain this action and facts sufficient to state causes of action for equitable and injunctive relief. The Court should deny the Motion to Dismiss and proceed on the merits.

## IV. THIS COURT HAS JURISDICTION

> *Essentially, the courts have found that trusteeship without standards, remedies, or procedural protections borders on being meaningless and unenforceable. It is important to note that these court decisions have all arisen in the context of the trust responsibility as applied to physical assets. The principles of law derived from common law trust doctrine are readily applicable to the trust relationship as it affects the United States' stewardship of Indian trust assets.*[30]

Although Defendants' incorrectly contend that different criteria apply to this case, it is well-established that when bringing an action against the United States or its officials, a plaintiff must satisfy only three requirements there must be: (1) subject matter jurisdiction; (2) a waiver of sovereign immunity; and (3) a cause of action.[31] These are the only requirements for maintaining a suit against the United States or its officials, and all are satisfied in the instant case.

---

[30] American Indian Policy Review Commission of the Congress of the United States, Final Report, May 17, 1977, vol. 1, page 131.

[31] *See United Am., Inc. v. N.B.C.-U.S.A. Hous., Inc. Twenty Seven*, 400 F. Supp.2d 59, 61 (D.D.C. 2005) (citing *Presidential Gardens Assocs. v. United States*, 175 F.3d 132, 139 (2d Cir. 1999)).

## A. This Court Has Subject Matter Jurisdiction

The Tonkawa assert claims based on numerous treaties, statutes, regulations and other law establishing the trust relationship between the United States and the Tonkawa. As such, these claims arise under the laws of the United States.[32] **Nowhere in their Motion to Dismiss do Defendants dispute this Court's federal question jurisdiction under 28 U.S.C. § 1331.**

## B. The United States has Waived Sovereign Immunity

Section 702 of the APA,[33] provides the requisite waiver of sovereign immunity (emphasis added):

> An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority **shall not be dismissed nor relief therein be denied** on the ground that it is against the United States or that the United States is an indispensable party. The United States may be named as a defendant in any such action, and **a judgment or decree may be entered against the United States** . . . .

---

[32] *See*, *e.g.*, U.S. CONST. art. 1, § 3, cl. 8; Pub. L. No. 101-512, 104 Stat. 1915 (1990); Pub. L. No. 102-154, 105 Stat. 990 (1991); Pub. L. 102-381, 106 Stat. 1374 (1992); Pub. L. No. 103-138, 107 Stat. 1379 (1993); Pub. L. No. 103-332, 108 Stat. 2499 (1994); Pub. L. No. 104-134, 110 Stat. 1321 (1996); Pub. L. No. 104-208, 110 Stat. 3009 (1996); Pub. L. No. 105-83, 111 Stat. 1543 (1997); Pub. L. No. 105-277, 112 Stat. 2681 (1998); Pub. L. No. 106-113, 113 Stat. 1501 (1999); Pub. L. No. 106-291, 114 Stat. 922 (2000); Pub. L. No. 107-63, 115 Stat. 414 (2001); Pub. L. No. 108-7, 117 Stat. 11 (2003); Pub. L. No. 108-108, 117 Stat. 1241 (2003); Pub. L. No. 108-447, 118 Stat. 2809 (2004); Pub. L. No. 109-54, 119 Stat. 499 (2005); Pub. L. No. 110-161, 121 Stat. 1844 (2007).

[33] 5 U.S.C. § 702.

Section 702 waives sovereign immunity for actions (such as this one) against a federal official seeking relief "other than money damages."[34] Critically, although housed within the APA, it is well-settled that the "APA's waiver of sovereign immunity **applies to any suit whether under the APA or not**."[35]

> The legislative history of this provision could not be more lucid. It states that this language was intended 'to eliminate the defense of sovereign immunity with respect to any action in a court of the United States seeking relief other than money damages and based on the assertion of unlawful official action by a Federal officer . . . .

*Schnapper v. Foley*, 667 F.2d 102, 107 (D.C. Cir. 1981) (citation and quotation marks omitted).[36]

As recently as 2006, the Federal Circuit has noted that it has "previously, and repeatedly, rejected" the argument that § 702's waiver applies only to actions arising under the APA.[37]

> The Judiciary Committees of both Houses, in their reports on the 1976 amendment, identified as the measure's clear purpose "elimina(tion of) the sovereign immunity" defense in *all* equitable actions

---

[34] *See* 5 U.S.C. § 702.

[35] *Chamber of Commerce of the U.S. v. Reich*, 74 F.3d 1322, 1328 (D.C. Cir. 1996) (emphasis added).

[36] *See also, Cobell VI*, 240 F.3d at 1094-95; *Clark v. Library of Congress*, 750 F.2d 89, 102 (D.C. Cir. 1984); *Sea-Land Serv., Inc. v. Alaska R.R.*, 659 F.2d 243, 244 (D.C. Cir. 1981); *Assiniboine & Sioux Tribes of Fort Peck Indian Reservation v. Bd. of Oil & Gas Conservation*, 792 F.2d 782, 793 (9th Cir. 1986); *Cobell v. Babbitt*, 30 F. Supp.2d 24, 31 (D.D.C. 1998) ("*Cobell I*").

[37] *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 186 (D.C. Cir. 2006) (holding that § 702 waived sovereign immunity for the plaintiff's First Amendment claim against the Federal Trade Commission).

> for specific relief against a Federal agency or officer
> acting in an official capacity.

*Id.* (citation omitted) (emphasis and alterations in the original).

Indeed, the government recently has conceded this point in the related *Cobell* litigation by "acknowledg[ing] that the law in this Circuit is that the APA's waiver of sovereign immunity applies to any suit whether under the APA or not."[38]

Therefore, the Tonkawa invoke § 702's **waiver of sovereign immunity** because Congress intended it to be used in this manner, not because their claims rely solely on the APA. Although the Tonkawa state separate causes of action under the APA, those causes of action are separate from the Tribe's equitable claims against the Defendants. Section 702 simply provides the requisite waiver of sovereign immunity.

Further, in connection with the 1994 Act, Congress took pains to establish a date by which tribes would be deemed to have received TRP Reports as a way of establishing a statute of limitations within which tribes could file claims against the United States:

> (a)  IN  GENERAL.—Notwithstanding  any  other
> provision of law, for purposes of determining the date
> on  which  an  Indian  tribe  received  a  reconciliation
> report for purposes of applying a statute of limitations,
> any such report provided to or received by an Indian
> tribe in response to section 304 of the American Indian

---

[38] *See* Defendants' Response to Plaintiffs' Memorandum in Support of Equitable Restitution and Disgorgement at p. 5 n.2 (Case No. 1:96CV01285, Dkt. # 3519) (quotation and citation omitted)).

Trust Fund Management Reform Act of 1994 (25 U.S.C. 4044) shall be deemed to have been received by the Indian tribe on December 31, 1999.

(b) STATEMENT OF PURPOSE.—Subsection (a) is solely intended to provide recipients of reconciliation reports with the opportunity to postpone the filing of claims, or to facilitate the voluntary dismissal of claims, to encourage settlement negotiations with the United States.

Pub. L. 107-153, 116 Stat. 79.[39]

In interpreting the legislative history of a statute, there is a presumption that Congress was aware of the judicial construction of existing law.[40] Thus, a newly-enacted statute "is to be read in conjunction with the entire existing body of law."[41] Congress is presumed to know the law. When considering the bill that became Pub. L. 107-153, Congress anticipated litigation would be filed against the United States as a result of the TRP Reports (or lack thereof) and **acknowledged the United States may be held liable.**

These legal actions initiated to preserve tribal claims will be filed and have been filed in Federal courts across the country, thereby holding the potential for multiple adjudications with varying and inconsistent results, as well as **potentially exposing the United States to liability.**

---

[39] The date was extended by one year by Pub. L. 109-158, 119 Stat. 2954.

[40] *Shapiro v. United States*, 335 U.S. 1, 16, 68 S.Ct. 1375, 1383-1384, 92 L.Ed.2d 1787 (1948).

[41] *Kansas City v. Federal Pacific Electric Co.*, 310 F.2d 271, 275 (8th Cir.), cert. den., 371 U.S. 912, 83 S.Ct. 256, 9 L.Ed.2d 171 (1962).

S. REP. NO. 107-138 at 3 (2002). A member of the House of Representatives had this to say:

> It was clear when these reports were sent to Indian tribes in 1996 that they were not a full and accurate reconciling of the tribal accounts.
>
> Now, 6 years later, Indian tribes fear that a statute of limitations could run out on them and they could be precluded from challenging the accuracy of those Arthur Andersen reports.
>
> While I think it is unlikely any court would find in favor of the government in any such case, we need to allay the concerns and put off this deadline.

148 CONG. REC. H704 (daily ed. March 6, 2002) (statement of Rep. Rahall).

If sovereign immunity prevents tribes from obtaining relief against the United States, there would be no need to extend a statute of limitations to encourage settlement negotiations. Obviously, federal courts may entertain suits relating to the required trust accountings. To find otherwise would violate "the elementary canon of construction that a statute should be interpreted so as not to render one part inoperative."[42] Statutory and treaty construction should be construed in a manner to effectuate their purpose.[43]

---

[42] *Mountain States Tel. & Tel. Co. v. Pueblo of Santa Ana*, 472 U.S. 237, 249, 105 S.Ct. 2587, 2594, 86 L.Ed.2d 168 (1985) (quoting *Colautti v. Franklin*, 439 U.S. 379, 392, 99 S.Ct. 675, 684, 58 L.Ed.2d 596 (1979)); *In re Dyke*, 943 F.2d 1435, 1443 (5th Cir.1991).

[43] *Confederated Tribes of the Chehalis Indian Reservation v. Washington*, 96 F.3d 34, 342 (9th Cir. 1996); *Puyallup Indian Tribe V. Port of Tacoma*, 717 F.2d 1251, 1258 (9th Cir. 1983; and *Confederated Salish and Kootenai Tribes v. Namen*, 665 F.2d 951 (9th Cir. 1982).

## C. The Tonkawa Adequately State a Cause of Action

The Tonkawa state various causes of action in equity to enforce fiduciary duties arising from the trust relationship between the Tonkawa and Defendants.[44] Contrary to arguments in the Motion to Dismiss, the statutes and regulations addressing the trust relationship between the Tonkawa and Defendants unquestionably give rise to trust duties that can be enforced outside of the APA.

It is axiomatic that a "court of equity, having jurisdiction over the administration of trusts, will give to the beneficiaries of a trust such remedies as are necessary for the protection of their interests . . . ."[45] Accordingly, this Court has the authority and responsibility to enforce trust duties using its inherent equitable power to ensure protection of the beneficiary.[46]

The Tribe's causes of action are derived in part from various statutes and regulations that establish the trust relationship between the United States and the Tonkawa. In the seminal case of *Mitchell II*, the Supreme Court recognized a substantive right to enforce trust duties when federal statutes and regulations establish a trust relationship between the government and Indian trust

---

[44] *See, e.g.* Amended Complaint ¶¶ 27-36.

[45] William F. Fratcher, 3 *Scott on Trusts* § 199, at 203-04 (4th ed. 1988).

[46] *See, e.g.*, *Vill. of Brookfield v. Pentis*, 101 F.2d 516, 520-21 (7th Cir. 1939) ("Courts of equity have original inherent jurisdiction to decree and enforce trusts and to do whatever is necessary to preserve them from destruction."); *Manchester Band of Pomo Indians, Inc. v. United States*, 363 F. Supp. 1238, 1242 (N.D. Cal. 1973) (finding that district courts have "jurisdiction over actions to compel the responsible officers of the United States to perform [their trust] duties in the event [that] they have not done so.").

beneficiaries.[47] The Court concluded that a:

> fiduciary relationship necessarily arises when the
> Government assumes such elaborate control over . . .
> property belonging to Indians. All of the necessary
> elements of a common law trust are present: a trustee
> (the United States), a beneficiary (the [tribe or] Indian
> allottees), and a trust corpus (Indian timber, lands, and
> funds).

*Id.* at 225. The Court further held that a cause of action to obtain traditionally

available remedies for the violation of the rights of the beneficiaries is inherent in

and "naturally follows" from the creation of the trust.[48]

The Supreme Court reaffirmed the result of *Mitchell II* in *United States v.

White Mountain Apache Tribe*.[49] There, the plaintiff tribe sued to recover for the

government's failure to maintain reservation buildings that had fallen into

disrepair while occupied by the government. The government moved to dismiss,

arguing it was not legally bound to maintain or restore the property.[50] The

Supreme Court flatly rejected the government's argument, finding the absence of

law to "expressly subject the Government to duties of management and

conservation" to be immaterial.[51] Instead, the Court relied on *Mitchell II* and held

that where a statute gave rise to a trust relationship and the government exercised

---

[47] *United States v. Mitchell,* 463 U.S. 206 , 103 S. Ct. 2961 (1983).

[48] *Id.* at 226.

[49] *United States v. White Mountain Apache Tribe,* 537 U.S. 465, 123 S. Ct. 1126
(2003).

[50] *White Mountain Apache*, 537 U.S. at 469-70.

[51] *Id.* at 475.

control over the trust property, it "naturally follow[ed]" that the government had a judicially enforceable fiduciary obligation to preserve the trust property.[52]

> This is so because elementary trust law, after all, confirms the commonsense assumption that a fiduciary actually administering trust property may not allow it to fall into ruin . . . . One of the fundamental common-law trust duties . . . . is to preserve and maintain trust assets."

*White Mountain Apache*, 537 U.S. at 475 (internal citation and quotation omitted)).

Here, as in *Mitchell II* and *White Mountain Apache*, the United States admittedly has held and continues to hold in trust the tribal lands, funds, and other trust assets of the Tonkawa and has assumed the fiduciary obligations of a trustee. The longstanding trust relationship between the Tonkawa and Defendants is rooted in and derived from numerous treaties, statutes, and regulations as well as common-law principals. This body of law gives the United States control over and responsibility for tribal assets and resources, but obligates the United States to the full range of fiduciary obligations. It "naturally follows" from the establishment of this trust relationship that an ordinary right of action seeking an accounting and other equitable relief is available to the Tonkawa.[53]

---

[52] *Id.* at 475-76 (citing *Mitchell II*, 463 U.S. at 226).

[53] *See Cobell VI*, 240 F.3d at 1101 ("While *Mitchell II* involved a claim for damages, nothing in that decision or other Indian cases would imply that appellants are not entitled to declaratory or injunctive relief. Such remedies are the traditional ones for violations of trust duties."); *Beckett v. Air Line Pilots Ass'n*, 995 F.2d 280, 286 (D.C. Cir. 1993) ("Just as an intended third party beneficiary may sue to enforce a contract, it is equally fundamental that the beneficiary of a

This trust relationship originated with the idea that tribes' "relation to the United States resembles that of a ward to his guardian."[54] This relationship evolved from the very clearly defined premise that:

> Indian tribes are wards of the nation. They are communities dependant on the U.S . . . . there arises the duty of protection, and with it the power. This has always been recognized by the executive, and by congress, and by this court, whenever the question has arisen.

*U.S. v. Kagama*, 118 U.S. 375, 384-85 (1886).

Once a fiduciary relationship is established by statute, the government's fiduciary duties follow as a matter of law. While rooted in and derived from various statutes, treaties and regulations, these duties "are largely defined in traditional equitable terms" and may be filled in by reference to trust law.[55] Courts "must infer that Congress intended to impose on [the] trustees traditional fiduciary duties unless Congress has unequivocally expressed an intent to the contrary."[56]

---

trust may maintain a suit to compel the trustee to perform his duties as trustee or to redress a breach of trust." (citing Restatement (Second) of Trusts § 199) (1959)).

[54] *Cherokee Nation v. Georgia*, 30 U.S. (5 Pet.) 1 at 17 (1831).

[55] *Cobell VI*, 240 F.3d at 1099.

[56] *Id.* at 1100 (quoting *Amax Coal Co.*, 452 U.S. at 330); *see also Nevada v. United States*, 463 U.S. 110, 142 (1983) ("[W]here only a relationship between the Government and the tribe is involved, the law respecting obligations between a trustee and a beneficiary in private litigation will in many, if not all, respects adequately describe the duty of the United States."); *White Mountain Apache*, 537 U.S. at 475; *Cobell VI*, 240 F.3d at 1098-99 ("It is no doubt true that the government's fiduciary responsibilities necessarily depend on the substantive laws creating those obligations.... This does not mean that the failure to specify the precise nature of the fiduciary obligation or to enumerate the trustee's duties

In sum, this Court exercises jurisdiction over the Tribe's claims under 28 U.S.C. § 1331 as a federal question. This Court has the equitable power to enforce Defendants' statutory trust responsibilities. 5 U.S.C. § 702 of the APA provides the necessary waiver of sovereign immunity, but the Tonkawa state causes of action distinct from and in no way dependent upon the APA.

## V. THE TONKAWA ARE ENTITLED TO A COMPLETE ACCOUNTING

> *The Department of the Interior adopts a very narrow interpretation of the trustee concept by limiting its application to the lands, natural resources and management of trust funds of "federally recognized" tribes. This is little reason to so restrict the trust doctrine other than administrative convenience. There is legal authority that the United States trust duty is much broader. . . . The fact that the United States has been notoriously unfaithful in observing its commitments to the Indian tribes is not seen as lessening the continuing responsibility.[57]*

### A. The Tonkawa Seek a Complete Accounting.

First and foremost, it is important to be clear about exactly what remedy the Tonkawa seek. At this time, the Tonkawa seek an accounting.[58] This is not unusual relief. As explained by the Federal Circuit:

> An accounting is a species of compulsory disclosure, predicated upon the assumption that the party seeking relief does not have the means to determine how much – or, in fact, whether – any money properly his is

---

absolves the government of its responsibilities." (internal quotation and citations omitted)).

[57] American Indian Policy Review Commission of the Congress of the United States, Final Report, May 17, 1977, vol. 1, page 130.

[58] *See e.g*., Amended Complaint ¶ 35.

> being held by another. The appropriate remedy,
> particularly where the determinations may be detailed
> and complex, is an order to account in a proceeding in
> which the burden of establishing the non-existence of
> money due to the plaintiff rests upon the defendant.

*Rosenak v. Poller*, 290 F.2d 748, 750 (D.C. Cir. 1961).

It is beyond dispute that Defendants have a fiduciary duty to provide an accounting and that this Court has the authority to compel them to do so.[59] Should the accounting reveal that the government has not faithfully carried out its statutory trust obligations, the Tonkawa may also seek such additional equitable relief as may be appropriate to redress those breaches.[60]

Because the need for such additional relief is not yet established or defined, the Court need not rule on its availability. Nevertheless, because Defendants go to great lengths to conflate such relief with money damages not available in this Court under Section 702, the Tonkawa must briefly respond.

### B. Defendants' Duty to Account Predates and Transcends the 1994 Act

Defendants argue extensively, but incorrectly, that: (1) the 1994 Act exhaustively and exclusively defines their trust responsibilities; and (2) **attempted** compliance with the 1994 Act's accounting requirements satisfies the federal

---

[59] *See*, *e.g.*, *Cobell VI*, 240 F.3d, 1104. ("'It is fundamental that an action for accounting is an equitable claim and that courts of equity have original jurisdiction to compel an accounting.'" (quoting *Klamath & Modoc Tribes*, 174 Cl. Ct. at 487)); George T. Bogert, *The Law of Trusts & Trustees* § 963 (2d ed. Rev. & 3d ed. 2007) ("In order to obtain an accounting it is not necessary for the beneficiary to allege that there is any payment immediately due him under the trust or that the trustee in some way is in default.")).

[60] *See* Amended Complaint ¶¶ 35-36.

government's trust responsibility. In *Cobell VI*, Defendants' argument fell flat:

> The fundamental problem with [the federal government's] claims is the premise that their duties are solely defined by the 1994 Act. The Indian Trust Fund Management Reform Act **reaffirmed and clarified preexisting duties; it did not create them.** It further sought to remedy the government's long-standing failure to discharge its trust obligations; **it did not define and limit the extent of appellants' obligations.**

*Cobell VI*, 240 F.3d at 1100 (emphasis added). The Court further explained that:

> Enactment of the [1994 Act] **did not alter** the nature or scope of the fiduciary duties owed by the government to [Indian] trust beneficiaries. Rather, by its very terms the 1994 Act identified a portion of the government's specific obligations and created additional means to ensure that the obligations would be carried out.

*Id.* (emphasis added).[61]

Accordingly, the Federal Circuit in *Cobell VI* held that "the 1994 Act plainly reaffirm[ed] the government's **preexisting duty to provide an accounting**" and that "**such an obligation inheres in the trust relationship**

---

[61] *See also id.* at 1090 n.2 ("That the [1994 Act] recognized, rather than created, the government's [Indian] trust duties is clear from the Act's text and structure. Indeed, Title I of the Act is titled 'Recognition of Trust Responsibility.'"); *Chippewa Cree Tribe of the Rocky Boy's Reservation v. Norton*, Case No. 02-276 (RCL), Memorandum and Order of July 23, 2002 at 2 (D.D.C. 2002) ("The 1994 Act codifies certain preexisting duties that the Secretary of the Interior, as a trustee-delegate of the United States, owes both to individual Indian and tribal trust beneficiaries.").

**itself.**[62] Simply stated, "[n]othing in the 1994 Act, nor any other federal statute, limits or alters this right [to a complete accounting]."[63]

The duty for an accounting is nothing new. Given the unique relationship between the United States and the Tonkawa, "the responsibilities of the Federal Government to account to the trust beneficiary are considerably broader than merely accounting to a court for the management of a ward's property."[64]

Section 304 of the 1994 Act (25 U.S.C. § 4044) requires the Department of Interior to report to Congress regarding its efforts to reconcile the balances in tribal trust accounts. This statute does not fully delineate the government's fiduciary obligations, nor does it in any way supersede, eliminate, or limit the preexisting duty to provide the Tonkawa with a full accounting.[65]

The argument that the 1994 Act as a whole, much less § 304 by itself, replaced or limited the government's pre-existing duty to account cannot withstand scrutiny. In any event, the **Indian Canons of Construction overcome the ordinary rules of deference to an administrative agency's interpretation of**

---

[62] *Cobell VI*, 240 F.3d at 1103 (emphasis added); *see also id.* at 1102 (holding that the 1994 Act "reaffirms the government's preexisting fiduciary duty to perform a complete historical accounting").

[63] *Id.* at 1104.

[64] American Indian Policy Review Commission of the Congress of the United States, Final Report, May 17, 1977, vol. 1, page 127.

[65] *Cobell VI*, 240 F.3d at 1104 ("*Nothing* in the 1994 Act, nor any other federal statute, acts to limit or alter this right." (emphasis added)); *see also id.* at 1100 ("[T]he government has other trust responsibilities not enumerated in the 1994 Act.").

**a statute that it administers.[66]**

## C. This Court has Jurisdiction to Order a Complete Accounting

This Court has broad and inherent equitable authority conferred by the Constitution and Congress to grant the relief requested by the Tonkawa.[67] This Court's powers are available to fashion equitable remedies and to decide on the merits all matters that are presently before it, including, but not limited to, the Tribe's requests for an accounting.[68] As the Supreme Court held in *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*,[69] "the equity jurisdiction of the federal courts" is identical to that of "jurisdiction in equity exercised by the High Court of Chancery in England at the time of the adoption of the Constitution and the enactment of the original Judiciary Act, 1789 (1 Stat. 73)."[70] Nevertheless, as discussed below, a sweeping exercise of the Court's equitable jurisdiction is not necessary in this case, because the Tonkawa seek a

---

[66] *Ramah Navajo Chapter v. Lujan*, 112 F.3d 1455, 1461-1462 (10th Cir. 1997).

[67] *See*, *e.g.*, *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971) ("[T]he scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies."), *quoted in Cobell VI, Cobell v. Norton*, 240 F.3d 1081, 1008 (D.C. Cir. 2001); *see also Hecht Co. v. Bowles*, 321 U.S. 321, 329 (1944) ("The essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case. Flexibility rather than rigidity has distinguished it.").

[68] *See*, *e.g.*, *Scott on Trusts* § 199, at 203-04 (4th ed. 1988) ("A court of equity, having jurisdiction over the administration of trusts, will give to the beneficiaries of a trust such remedies as are necessary for the protection of their interests.").

[69] *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.* 527 U.S. 308 (1999).

[70] *Id.* at 319.

very straightforward remedy.

### D. A Complete Accounting May Lead to Additional Equitable Relief

Section 702 of the APA waives the sovereign immunity of the United States and its officers in cases where the relief requested is "other than money damages." The Supreme Court has clarified in the case of *Bowen v. Massachusetts*, that "money damages" is not synonymous with "monetary relief."[71] Indeed, Congress included the phrase "money damages" in § 702 to broaden – not restrict – the district courts' jurisdiction.[72]

The distinction between money damages and other monetary relief is clear. An action at law for "money damages" is "intended to provide a victim with monetary compensation for an injury to his person, property or reputation."[73] In contrast, where an equitable action seeks specific relief, including "the recovery of specific property or monies," said relief is not damages because it does not compensate for loss.[74] "The fact that a judicial remedy may require one party to pay money to another is not a sufficient reason to characterize the relief as 'money damages.'"[75] Indeed, in using the phrase "money damages" in § 702, Congress

---

[71] *Bowen v. Massachusetts* 487 U.S. 879, 896 (1988).

[72] *Esch v. Yeutter*, 876 F.2d 976, 981 (D.C. Cir. 1989).

[73] *Id.* at 893.

[74] *Id.* (quoting *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 688 (1949)); *see also Cobell v. Norton*, 260 F. Supp.2d 98, 107 (D.D.C. 2003) (citing *Bowen* and noting the distinction between an action for "money damages" and an action in equity for recovery of "specific monies").

[75] *Bowen*, 487 U.S. at 893; *see also Anselmo v. King*, 902 F. Supp. 273, 275 (D.D.C. 1995).

intentionally "authorize[d] equitable suits for specific monetary relief."[76]

Defendants try to artificially narrow the overwhelming authority supporting the possible Tribe claim by arguing that § 702 allows for an award of monetary relief only in cases where specific relief is sought pursuant to an express statutory mandate. It is well-established, however, that the right to recover specific relief in the form of a monetary award under § 702 applies to governmental obligations – such as those at issue in the instant cases – created by statute and informed by common law.[77] The Second Circuit's discussion is illustrative:

> The government also argues that the *Bowen* rule applies only in those cases where the duty to make the payment is statutory . . . . In our view, the [*Bowen*] . . . opinion rests not on the fact that the federal government's duty was statutory, but rather on the distinction between money damages, which seek to compensate for governmental failure to perform a legal duty, and injunctive relief requiring that the duty be performed. We can see no reason why the *Bowen* holding should be limited to duties prescribed by statute, as opposed to those arising under some other rule of law, any more than it should be limited to claims brought by Massachusetts.

*Aetna Cas. & Sur. Co.*, 71 F.3d at 479 (internal citations omitted). In arguing that

---

[76] *Bowen*, 487 U.S. at 899-900; *see also M.K. v. Tenet*, 99 F. Supp.2d 12, 24 (D.D.C. 2000) ("[T]he exclusion of damage claims from the APA's waiver of sovereign immunity does not exclude equitable claims for specific monetary relief." (emphasis added)).

[77] *Aetna Cas. & Sur. Co. v. United States*, 71 F.3d 475, 477 (2d Cir. 1995) (finding *Bowen* applicable to duties "prescribed by statute" as well as those "arising under some other rule of law"); *see also Cobell VI*, 240 F.3d at 1094 (holding that "rel[iance] upon common law trust principles in pursuit of their claim is immaterial" to the question of jurisdiction under § 702).

*Bowen* bars the specific equitable relief sought by the Tribe, Defendants misconstrue *Bowen* and its progeny. As those cases demonstrate, 5 U.S.C. §702's waiver of immunity allows the Tribe's claims for equitable relief other than monetary damages to proceed in this Court.

## E. This Court Can Award Restitution

In an effort to avoid subjecting their accounting efforts to judicial scrutiny (and perhaps anticipating the outcome of such scrutiny), the Defendants assume that the Tonkawa will seek monetary relief and prematurely label such relief "impermissible." They do this to try to confuse the issues before the Court about the breadth of its powers at this stage of the litigation. **Because the Tonkawa have not yet received a complete accounting, their entitlement to additional equitable relief is not yet before the Court. The debate over whether or not this Court can award additional equitable relief can wait for another day.**

To the extent the accounting uncovers that the balances of the Tribe's trust fund account is misstated, then a correction of that balance would be in order and routine.[78] Such a balance correction is a correction of a bookkeeping error, and

---

[78] *See*, *e.g.*, *Rainbolt v. Johnson*, 669 F.2d 767, 769 (D.C. Cir. 1981) ("Once the accounting is completed, the District Court shall provide such additional relief for plaintiff-appellant as may be appropriate.") (citing *Bogert on Trusts* § 962 (1962)); 76 Am. Jur. 2d, *Trusts* § 506, at 726 ("[T]he trustee may be required in a suit for an accounting to show that he or she faithfully performed his or her duties, and is subject to appropriate remedies if he or she was unfaithful to the trust."); *Scott on Trusts* § 199.1 (4th ed. 1988) ("As has been stated, the trustee is under a duty to the beneficiaries to make an accounting with respect to his administration of the trust. The court will specifically enforce this duty, and compel the trustee to render

thus is not compensation for a loss.

To the extent that a remedy in restitution may be appropriate, it is likewise settled that equitable restitution is available.

> An action in restitution *can* result in the defendant's payment of money . . . . In such a case the payment of money from defendant to plaintiff represents a kind of specific relief rather than compensatory damages. Whatever restitution may encompass . . . we clearly may not collapse it into the broader notion of "compensation."

*Crocker v. Piedmont Aviation, Inc.*, 49 F.3d 735, 747 (D.C. Cir. 1995) (internal citations omitted) (emphasis in original).

Unlike restitution, damages are substitutionary.[79] Damages compensate plaintiffs for the loss that they have suffered as a consequence of a defendant's breaches of trust.[80] Equitable restitution, in contrast, simply restores to a plaintiff the very funds to which it is entitled but that have been wrongfully withheld.[81] But until the Defendants provide the Tonkawa with a full accounting, the Tonkawa cannot ascertain whether they are entitled to assert a claim for monetary relief.

---

a proper accounting to the court, and thereupon such relief, if any, as the beneficiaries may be entitled to receive.").

[79] *Id.*

[80] *See, e.g.*, *Bowen*, 487 U.S. at 895 ("Damages are given to the plaintiff to *substitute* for a suffered loss, whereas specific remedies are . . . [an] attempt to give the plaintiff the very thing to which he [is] entitled." (internal citations and quotations omitted) (emphasis in original)).

[81] *See Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 214 (2002) (describing "restitution . . . in equity" as seeking to "restore to the plaintiff particular funds or property in the defendant's possession").

Accordingly, Congress has tolled the statute of limitations for tribes to assert claims for monetary relief until **after** they receive an accounting. "[I]t is not at all clear that the reconciliation reports at issue did in fact provide tribes with notice sufficient to commence the running of the statute of limitations."[82]

> **. . . [n]otwithstanding any other provision of law,** the statute of limitations shall not commence to run on any claim, including any claim in litigation pending on the date of the enactment of this Act, concerning losses to or mismanagement of trust funds, until the affected tribe or individual Indian has been furnished with an accounting of such funds from which the beneficiary can determine whether there has been a loss.

Pub. L. No. 110-161, 121 Stat. 1844 (2007) (emphasis added). No accountings from which the Tonkawa can determine losses have been provided. Indeed, a full and complete accounting is the threshold relief the Tonkawa seek in this Action.

Regardless, the Defendants cited cases support the Court's jurisdiction to award monetary relief to the Tonkawa if it is justified. For example, the Defendants rely heavily on *City of Houston v. Dep't of Hous. & Urban Dev.,*[83] which addressed a completely different question, to wit: whether a court could award relief to a city when the federal government reduced the amount of a grant previously awarded to the city.

The Tonkawa are not seeking recovery of government funds under an ordinary Congressional appropriation. Instead, they seek an accounting and, to the

---

[82] S. REP. NO. 107-138 at 3 (2002).

[83] *City of Houston v. Dep't of Hous. & Urban Dev* 24 F.3d 1421 (D.C. Cir. 1994).

extent that the accounting shows it to be justified, **the recovery of their own monies.** This case is therefore similar to *American Community Bankers*,[84] wherein a trade association of banks and savings institutions filed a declaratory judgment action to recover monies improperly assessed by the FDIC.

> Whereas *City of Houston* addressed whether a court could award to a claimant funds which otherwise belonged to the government, this case questions whether the government can **retain funds which originally belonged to Bankers' members.** Unlike Houston, Bankers is not seeking compensation for economic losses suffered by the government's alleged wrongdoing; Bankers wants the FDIC to **return that which rightfully belonged to Bankers' member institutions in the first place.**

*Am. Cmty. Bankers*, 200 F.3d at 830 (emphasis added).

Moreover, the Court in *American Community Bankers* specifically rejected Defendants' current argument that there can be no recovery if the money withheld has been improperly disbursed or there is no identifiable *res*. "The FDIC cannot eliminate the entitlement of [a plaintiff] to reimbursement by distributing the improperly collected funds elsewhere."[85] Similarly, in this case any funds the Tonkawa may eventually seek as damages are **not funds that ever belonged to the United States.** The funds have always belonged to the Tonkawa.

The Tonkawa seek an accounting, a remedy upon which questions of

---

[84] *American Community Bankers v. FDIC*, 200 F.3d 822 (D.C.Cir. 2000).

[85] *Am. Cmty. Bankers*, 200 F.3d at 830; *see also U.S. v. Minor*, 228 F.3d 352, 355 (4th Cir. 2000) ("[T]hat the government obviously cannot restore to [the plaintiff] the specific currency that was seized does not transform the motion into an action at law.").

appropriation and funding have no bearing. Based on the accounting, the Tonkawa may eventually seek recovery of funds that have been improperly withheld by the United States, and the unlawful benefit that the trustee has obtained as a result of its actions. This is not compensation for a loss, but specific relief. Accordingly, neither § 702 nor the analysis set forth in *City of Houston* bars recovery.

### F. Section 1500 Considerations Do Not Apply

The Defendants also cite two CFC opinions – *Tohono O'Odham Nation v. United States*, 79 Fed. Cl. 645 (Fed. Cl. 2007), and *Ak-Chin Indian Community v. United States*, 80 Fed. Cl. 305 (Fed. Cl. 2008) – that are not relevant to this Court's exercise of jurisdiction. Both of those opinions addressed the impact 28 U.S.C. § 1500, a CFC-specific jurisdictional statute.

## VI. TONKAWA ALLEGATIONS SUPPORT NUMEROUS LEGAL THEORIES

> *The Federal trust responsibility emanates from the unique relationship between the United States and Indians in which the Federal Government undertook the obligation to ensure the survival of Indian tribes. It has its genesis in international law, colonial and U.S. treaties and agreements, Federal statutes and Federal judicial decisions.*[86]

The Tribe's claims are rooted in and supported by over 200 years of federal law and policy. Aside from common-law bases for their claims and for this Court's jurisdiction, the Tonkawa have stated causes of action and invoked this Court's jurisdiction under various federal statutes, including the APA.

---

[86] American Indian Policy Review Commission of the Congress of the United States, Final Report, May 17, 1977, vol. 1, page 136.

## A. *SUWA* Does Not Defeat APA 5 U.S.C. § 706(1) Claims

Defendants spent approximately 25 percent of their brief arguing incorrectly that the decision in the case referred to as *Cobell VI*[87] has been overturned by the *SUWA* decision and is no longer applicable. Why? Because out of the numerous (more than twenty) opinions issued by various courts in the *Cobell* litigation, *Cobell VI* contains the most authoritative interpretation of the 1994 Act – in a way that is detrimental to Defendants' case. Moreover, the "sound reasoning" of *Cobell VI* has been acknowledged by the Senate Committee on Indian Affairs.[88]

### i. The Court may Order an Accounting under § 706(1)

Defendants' argument regarding *SUWA* hinges on the patently incorrect premise that *SUWA* overruled *Cobell VI*. The foundation of Defendants' Motion to Dismiss is the audacious contention that the Tribe's claim for an accounting cannot be brought under § 706(1) because *Cobell VI*, which determined that § 706(1) provided a sound basis for such a claim, is no longer valid after *SUWA*. Section 706(1) states that (emphasis added):

> . . . [t]o the extent necessary to decision and when presented, the reviewing court **shall** decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court **shall**—

---

[87] *Cobell v. Norton*, 240 F.3d 1081 (D.C. Cir. 2001).

[88] S. REP. NO. 107-138 at 4 (2002).

> (1) compel agency action unlawfully withheld or unreasonably delayed; and . . . .

Cutting to the chase, in *SUWA* the Supreme Court held that § 706(1) allows a claim to proceed "only where a plaintiff asserts that an agency failed to take a **discrete** agency action that it is **required to take.**"[89] In *SUWA*, the plaintiff sued to force the Bureau of Land Management ("BLM") to take action that was **not** required under law. Accordingly, the Supreme Court held that a court could not compel BLM to take the requested action under § 706(1) of the APA.

*SUWA* thus stands for the unremarkable proposition that, under § 706(1) of the APA, courts can compel an agency to comply with its statutorily mandated duties. This essentially restates the rule already laid down in *Lujan v. National Wildlife Federation*,[90] albeit in the context of agency inaction rather than agency action.[91]

Nevertheless, Defendant uses *SUWA* to argue: (1) that because it has allegedly provided a TRP report,[92] this Court cannot order a complete accounting;[93] and (2) this Court is powerless to evaluate whether the TRP Report complies with either the letter or spirit of 25 U.S.C. § 4044. **This disingenuous**

---

[89] *SUWA*, 542 U.S. at 64, 66 (emphasis in original).

[90] *Lujan v. National Wildlife Federation* 497 U.S. 871 (1990).

[91] *See Lujan.* at 891 ("Under the terms of the APA, respondent must direct its attack against some particular 'agency action' that causes it harm.").

[92] Again, the Tonkawa dispute this factual assertion.

[93] Motion to Dismiss at 17-18.

**argument (and 14 pages of the Motion to Dismiss) can be summarized as follows:**

| | | |
|---|---|---|
| Step 1 | Congress reaffirms existing trust responsibilities and directs Defendants to provide a complete accounting to the earliest possible date. |
| Step 2 | Defendants (allegedly) submit a woefully incomplete accounting. |
| Step 3 | More than 200 years of federal trust responsibility should be dismissed, *i.e.*, DEFENDANTS WIN! |

This is the crux of the Defendants' argument, that a slipshod accounting project in attempted compliance with 25 U.S.C. § 4044 divests this Court of jurisdiction thanks to *SUWA*. This argument ignores the Defendants' fiduciary obligations to the Tonkawa and ignores the clarity of the congressional mandate, *i.e.*, to provide **"as full and complete accounting as possible of the account holder's funds to the earliest possible date**."[94] Defendants' stance is that a fabled 23-year accounting (out of more than 200 years of trust responsibility) is, if not the best they can do, all they are legally obligated to do.[95]

As in *Cobell VI*, this Court enjoys the authority to order Defendants to comply with their statutorily mandated duty to provide a full and complete accounting. This Court is within its power to find that the purported TRP Report did not fulfill the Defendants' congressional mandate and to direct the Defendants to provide a meaningful accounting.

---

[94] 25 U.S.C. § 4044(2) (emphasis added).

[95] Motion to Dismiss at 16-18.

ii. *Cobell VI* reaffirms that the Duty to Account Predates 1994 Act

Perhaps recognizing that *SUWA* actually supports this Court's jurisdiction, Defendants seek refuge in their repeatedly discredited contention that the 1994 Act is the sole source of their trust duties. Because, they argue, the 1994 Act does not define the contours of their accounting obligations with the clarity required by *SUWA*, this Court cannot compel their compliance under § 706(1).

This flawed argument has been addressed and rejected sufficiently in the case cited as the cornerstone of Defendants' argument.[96] What is more, as *Cobell VI* makes clear, the nature and scope of the trustee's obligations are informed by the common law. Accordingly, "the Secretary cannot escape his role as trustee by donning the mantle of administrator . . . ."[97] The Defendants' claims of administrative duties not rising to the level of a trustee are absurd and insult the Court's judicial notice of more than 200 years of trust principles.

In short, Defendants' case rises and falls on the untenable premise that *SUWA* reversed *Cobell VI*. That premise has not been accepted by any district or appellate court, nor is it compelled by *SUWA*. Defendants' argument that *SUWA* prevents this Court from ordering them to fulfill their pre-existing and statutory

---

[96] *See*, *e.g.*, *Cobell VI*, 240 F.3d at 1100-03.

[97] *Id.* at 1099 (internal quotations and citations omitted); *see also id.* ("[T]he Secretary is obligated to act as a fiduciary . . . his actions must not merely meet the minimal requirements of administrative law, but must also pass scrutiny under the more stringent standards demanded of a fiduciary.'" quoting *Jicarilla Apache Tribe v. Supron Energy Corp.*, 728 F.2d 1555, 1563 (10th Cir. 1984) (Seymour, J., concurring in part and dissenting in part), *adopted as majority opinion and modified en banc*, 782 F.2d 855 (10th Cir. 1986)).

trust obligations, including the duty to account, is thus wholly without merit.

## **B. The Tonkawa Adequately Alleged 5 U.S.C. § 706(2) Jurisdiction**

The Tonkawa adequately allege a right of action under § 706(2) of the APA,[98] to remedy agency action that is, *inter alia*, "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law."[99] The Federal Rules of Civil Procedure only require a complaint to contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"[100] By (allegedly) providing a 23-year accounting in response to the 1994 Act – solely based on reasons of convenience – when Congress has directed Defendants to provide a complete accounting "to the earliest date possible," Defendants have abused their discretion and acted contrary to law.

As discussed *supra*, at the motion to dismiss stage, the Court only tests the legal sufficiency of the Amended Complaint. In doing so, the Court must treat all factual allegations in the Tonkawa Amended Complaint as true and draw all reasonable inferences in favor of the Tonkawa.[101]

The Tonkawa have alleged jurisdiction under § 706(2) and identified the failure by the Defendants to satisfy their legal duty to provide an adequate

---

[98] 5 U.S.C. § 706(2).

[99] *See*, Amended Complaint at ¶¶ 28, 31.

[100] *Bell Atl. Corp. v. Twombly,* 127 S. Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)).

[101] *See, e.g., Ibrahim,* 539 F. Supp.2d at 147.

accounting, in other words, action that is "contrary to law." Therefore, the Court may properly assert jurisdiction pursuant to § 706(2).[102]

### C. The Tonkawa May Invoke § 706(1) and § 706(2) Together

Oddly, Defendants argue that the Tonkawa cannot invoke both § 706(1) and § 706(2) in setting forth their claims[103] even though the applicability of both § 706(1) and § 706(2) to a single case is not a novel concept. For example, in *Cobell XX*,[104] the Court noted that the October 2007 trial was designed to assess whether agency action "has been unlawfully withheld or unreasonably delayed" (under § 706(1)) **and** to review whether Interior's accounting plan is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" under § 706(2).[105]

### D. The Tonkawa sufficiently allege valid non-APA claims

Defendants mischaracterize the Tribe's claims as being grounded in the APA. To the contrary, the Tribe's claims are not, nor must they be, based exclusively on the APA. The Tonkawa state an independent, equitable cause of action to enforce express and implied federal trust responsibilities. As described in

---

[102] *See Riverkeeper, Inc. v. U.S. Environmental Protection Agency*, 514 F. Supp.2d 265 (S.D.N.Y. 2007) (holding that District Court had jurisdiction under § 706(2) where plaintiff alleged that "the EPA defendants' failure to promulgate regulations was arbitrary, capricious, and abuse of discretion or contrary to law.").

[103] *See* Fed. R. Civ. P. 8(d); *Oregon Natural Desert Ass'n v. Taylor*, 2005 WL 106599 at *7 (D. Or. 2005) (plaintiffs pleaded claim in the alternative under § 706(1) and (2); court concluded that the appropriate evaluation on facts presented there was pursuant to § 706(2) rather than under the umbrella of agency inaction).

[104] *Cobell v. Kempthorne,* 532 F.Supp.2d 37 (D.D.C. 2008) ("*Cobell XX*").

[105] *Cobell XX* at 88.

the Tribe's Amended Complaint, this action is premised in part on various statutes and treaties giving rise to a trust relationship between the United States and the Tonkawa and invokes this Court's inherent equitable authority to enforce the terms and obligations of the trust.

### E. Tucker Act and Indian Tucker Act Establish Jurisdiction

In a final, futile attempt to convince the Court it is powerless to hear the Tribe's claims, Defendants revisit the long discredited argument that the Tucker Act and Indian Tucker Act, 28 U.S.C. §§ 1491 & 1505 (collectively referred to herein as the "Tucker Acts"), preclude this Court from exercising jurisdiction under § 702 of the APA because § 702 does not apply "if any other statute that grants consent to suit explicitly or implicitly forbids the relief that is sought." This argument fails because Tucker Act jurisdiction is not exclusive for claims founded upon the Constitution or federal statutes or regulation.

The Tucker Acts waive sovereign immunity and provide jurisdiction in the Court of Federal Claims ("CFC") for certain causes of action, namely

> any Claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1). The Tucker Acts provide the CFC **exclusive** jurisdiction "over contract claims against the government" for amounts in excess of

$10,000."[106] By contrast, Tucker Act jurisdiction is *not* **exclusive** for claims founded upon the Constitution, federal laws, or regulations.[107]

Thus, while the Tonkawa may file (and, indeed have filed) breach of trust claims in the CFC, the Tucker Act does not confer upon that court **exclusive** jurisdiction over all such claims.

Defendants rely extensively on opinions and analysis involving contract actions, *i.e.*, actions in which Tucker Act jurisdiction is in fact exclusive, to support their flawed argument that the Tucker Acts preclude § 702 jurisdiction in this Court. But the Tonkawa have not asserted contract claims. Instead, the Tonkawa seek to enforce the government's statutory trust responsibilities.[108] Federal courts should be "mindful of the warning that [they] not 'subvert the congressional objectives underlying the enactment of [§ 702 of the APA] by allowing the government to give an overly expansive scope to the notion of claims

---

[106] *Transohio Sav. Bank v. Director, Office of Thrift Supervision*, 967 F.2d 598, 609 (D.C. Cir. 1992); *see also Tenn. ex rel Leech v. Dole*, 749 F.2d 331, 335 (6th Cir. 1984).

[107] *Transohio*, 967 F.2d at 609; *see generally* 28 U.S.C. § 1331(a).

[108] *Seminole Nation v. U.S.*, 316 U.S. 268, 296-297 (1942) ("In carrying out its treaty obligations with the Indian tribes the Government is something more than a mere contracting party."); *Joint Tribal Council of Passamaquoddy Tribe v. Morton*, 388 F. Supp. 649, 662 (D.C. Me. 1975), *aff'd*, 528 F.2d 370 (1st Cir. 1975) (*citing Seminole Nation* and holding that the relationship between the tribe and the United States "was not that of a mere contracting party" and the Non-Intercourse Act imposed fiduciary obligation on the United States to protect tribal land).

"founded upon" a contract.'"[109]

The Tribe's claims are not, and have never been, grounded in any contract. Instead, as discussed *supra*, the Tonkawa seek to enforce the government's statutory trust duties. Defendants' reliance upon contract cases to argue that the CFC has exclusive jurisdiction over the Tribe's claims is thus misplaced. The Court should pay no heed to their argument that the Tucker Acts prohibit this Court from granting the relief the Tonkawa seek.

### VII. THE TRIBE'S PRE-1946 CLAIMS ARE NOT TIME BARRED

> **The ultimate trustee in Indian affairs is the United States Congress** and it can establish or redefine the existence and scope of the Federal trust responsibility and even unilaterally dissolve the relationship if it chooses. This power stems from the plenary power of Congress in Indian affairs . . . . Congress has designated a principal agent for carrying out the trust, i.e., the Department of the Interior. **That agent cannot terminate the trust nor change the manner in which it is carried out,** but the trustee (i.e., Congress) itself can.[110]

In arguing that the Tribe's claims are barred by the statute of limitations in the Indian Claims Commission Act ("ICCA"), Defendants try to thwart almost two decades of Congressional action overriding the ICCA's limitations statute and ignore a solid body of case law interpreting the precise point at issue here adversely to Defendant. In addition, Defendants' broad position in this litigation

---

[109] *Transohio*, 967 F.2d at 611 (quoting Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 4101 at 319 (1988)).

[110] American Indian Policy Review Commission of the Congress of the United States, Final Report, May 17, 1977, vol. 1, page 129 (emphasis added).

regarding pre-ICCA claims is inconsistent with their position taken recently on the same issue in the CFC.

### A. Congress Deferred the Accrual of the Tribe's Pre-1946 Claims

The Tonkawa seek declaratory and equitable relief regarding their tribal trust funds. In 1990, Congress deferred the accrual of the statute of limitations on such claims pending receipt of trust fund accountings.

> [N]otwithstanding any other provision of law, the statute of limitations shall not commence to run on any claim concerning losses to or mismanagement of trust funds, until the affected tribe or individual Indian has been furnished with the accounting of such funds.

Pub. L. No. 101-512, 104 Stat. 1915 (1990) ("Tribal Trust Fund Accounting Statute"). In seventeen (17) successive Tribal Trust Fund Accounting Statutes Congress has repeated this claims accrual language.[111] The most recent version of these statutes provides:

> . . . notwithstanding any other provision of law, the statute of limitations shall not commence to run on any claim, including any claim in litigation pending on the date of the enactment of this Act, concerning losses to or mismanagement of trust funds, until the affected tribe or individual Indian has been furnished with an accounting of such funds from which the beneficiary

---

[111] *See* Pub. L. No. 102-154, 105 Stat. 990 (1991); Pub. L. 102-381, 106 Stat. 1374 (1992); Pub. L. No. 103-138, 107 Stat. 1379 (1993); Pub. L. No. 103-332, 108 Stat. 2499 (1994); Pub. L. No. 104-134, 110 Stat. 1321 (1996); Pub. L. No. 104-208, 110 Stat. 3009 (1996); Pub. L. No. 105-83, 111 Stat. 1543 (1997); Pub. L. No. 105-277, 112 Stat. 2681 (1998); Pub. L. No. 106-113, 113 Stat. 1501 (1999); Pub. L. No. 106-291, 114 Stat. 922 (2000); Pub. L. No. 107-63, 115 Stat. 414 (2001); Pub. L. No. 108-7, 117 Stat. 11 (2003); Pub. L. No. 108-108, 117 Stat. 1241 (2003); Pub. L. No. 108-447, 118 Stat. 2809 (2004); Pub. L. No. 109-54, 119 Stat. 499 (2005).

can determine whether there has been a loss.

Pub. L. No. 110-161, 121 Stat. 1844 (2007). The Tonkawa have not received an accounting from which they can determine whether there has been a loss.

Further, the legislative history behind the statute encouraging settlement talks makes congressional intent quite clear. As Congress prepared that legislation, the Department of the Interior urged Congress to adopt wording that would accomplish what Defendants argue in the Motion to Dismiss. Phil Hogen, then the Assistant Solicitor of the Department of the Interior, suggested the legislation be rewritten as follows:

> Solely for purposes of providing an opportunity to explore the settlement of tribal claims, the statute of limitations shall be tolled through September 30, 2003, **for any claim not already time-barred** concerning losses to or mismanagement of tribal trust funds.

S. REP. NO. 107-138 at 6 (2002). Obviously, Congress declined to adopt this wording.

The Tribal Trust Fund Accounting Statutes operate to toll the statute of limitations that might otherwise bar the Tribe's claims against the federal government.[112] "This resuscitative legislation is not an unusual action, and the courts have clearly recognized that Congress has the power to revive a time-barred claim . . . ."[113] The Indian Cannons of Construction provide "the general rule that statutes passed for the benefit of the dependant Indian tribes or communities are to

---

[112] 28 U.S.C. § 2501.

[113] *United States v. Smith,* 811 F. Supp. 646, 648 (S.D. Ala. 1992).

be liberally construed, doubtful expressions are to be resolved in favor of the Indians."[114]

Defendants argue, however, that Section 12[115] of the ICCA still bars pre-1946 claims. Under the Tribal Trust Fund Accounting Statutes themselves and as they have been construed consistently on this very point, Defendants are incorrect.

The ICCA Section 12 provides that "[t]he Commission shall receive claims for a period of five years after the date of the approval of this Act and no claim existing before such date but not presented within such time period may thereafter be submitted to any court or administrative agency for consideration . . . ."[116] Defendant cites cases such as *Navajo Tribe of Indians v. New Mexico*,[117] that held Section 12 generally bars claims accruing before August 13, 1946, but not filed with the ICC by August 13, 1951. **But none of those cases invoked subsequent acts of Congress such as the Tribal Trust Fund Accounting Statutes.**

In short, the Tribal Trust Fund Accounting Statutes have altered the landscape. They state explicitly that **no statute of limitations applies to trust claims until the trust claimant has received an accounting** regardless of how many years may have elapsed since the actual loss may have occurred. "The most basic rule of statutory construction requires that courts attribute to the words of a

---

[114] *Alaska Pacific Fisheries Co. v. U.S.*, 248 U.S. 78, 89 (1918).

[115] Formerly codified at 25 U.S.C. § 70k.

[116] Pub. L. No. 79-726, 60 Stat. 1049.

[117] *Navajo Tribe of Indians v. New Mexico* 809 F.2d 1455, 1460-61 (10th Cir. 1987).

statute their plain meaning."[118] "The plain meaning of a statute is (at least for starters) the one produced by reading its words to have the meaning they do in most contexts . . . ."[119]

Significantly, each and every Tribal Trust Fund Accounting Statute provides expressly that "notwithstanding any other provision of law, the statute of limitations shall not commence to run on any [trust fund] claim . . . ." It is well-established that "the phrase 'notwithstanding any other provision of law,' or a variation thereof, means exactly that; it is unambiguous and effectively supersedes all previous laws."[120] **"A clearer statement than 'notwithstanding any other provision of law' is difficult to imagine."**[121] Accordingly, by their plain meaning, the Tribal Trust Fund Accounting Statutes supersede any other laws, including the ICCA.

The Tribal Trust Fund Accounting Statutes are unambiguous. Even if the statutes were unclear, the Court must resolve the ambiguity relating to commencement of an action against Defendants in favor of the Tonkawa in light of the Indian Canons of Construction.

---

[118] *ITT World Commc'ns Inc. v. Fed. Commc'ns Comm'n,* 725 F.2d 732, 743 (D.C. Cir. 1984).

[119] *Sea-Land Serv., Inc. v. Dep't of Transp.,* 137 F.3d 640, 645 (D.C. Cir. 1998).

[120] *Energy Transp. Group, Inc. v. Skinner,* 752 F. Supp. 1, 10 (D. D.C. 1990), *aff'd on other grounds,* 956 F.2d 1206 (D.C. Cir. 1992).

[121] *Hill v. Republic of Iraq,* No. Civ. 4.1:99CV03346TP, 2003 WL 21057173, at *2 (D. D.C. Mar. 11, 2003), *rev'd on other grounds,* 328 F.3d 680 (D.C. Cir. 2003), *citing Crowley Caribbean Transp., Inc. v. United States,* 865 F. 2d 1281, 1283 (D.C. Cir. 1989).

### B. The Tribal Trust Fund Accounting Statutes Preserve Pre-1946 Claims

In construing the trust claims accrual statutes in *Shoshone Indian Tribe v. United States,*[122] the Federal Circuit held that "[t]he introductory phrase 'notwithstanding any other provision of law' connotes a legislative intent to displace any other provision of law that is contrary to the Act[s] . . . ." Congress' "clear intent" is that statutes of limitations "will not begin to run on a tribe's claims until an accounting is completed."[123] "This is simple logic – how can a beneficiary be aware of any claims unless and until an accounting has been rendered?"[124] Following the Federal Circuit's decision,[125] in *Shoshone* permitted the plaintiff tribes to amend their complaint to encompass claims dating back to 1868 despite the strenuous objections of the United States.[126]

As Defendant notes, a similar result has been reached in *Osage Nation v. United States.*[127] The court there found that the Tribal Trust Accounting Statutes

---

[122] *Shoshone Indian Tribe v. United States* 364 F.3d 1339, 1346 (Fed. Cir. 2004), *cert. denied,* 544 U.S. 973 (2005),

[123] *Id.* at 1347.

[124] *Id.*

[125] Conclusions that the Tribal Trust Fund Accounting Statutes have deferred the accrual of claims that might otherwise be barred under 28 U.S.C. § 2501 also have been reached in *Wolfchild v. United States,* 62 Fed. Cl. 521, 547-548 (Fed. Cl. 2004); *Wolfchild v. United States,* 72 Fed. Cl. 511, 525-26 (Fed. Cl. 2006) (these statutes "resuscitate[] and preserve[] plaintiffs' claims of breach of trust, displacing 28 U.S.C. Sec. 2501 in the process."); and, *Chippewa Cree Tribe. v. United States,* 69 Fed. Cl. 639, 663-664 (Fed. Cl. 2006).

[126] *Shoshone Indian Tribe v. United States,* 71 Fed. Cl. 172 (Fed. Cl. 2006).

[127] *Osage Nation v. United States* 57 Fed. Cl. 392, 396 (Fed. Cl. 2003).

effectively preserved pre-1946 claims, notwithstanding the ICCA.[128]

> As in *Shoshone,* the court finds that the language "notwithstanding any other provision of law" is a sufficient signal to indicate congressional awareness of an existing statutory framework and is also a determination to preserve claims "notwithstanding" that framework.

*Id.* at 398 (citations omitted). Hence, Congress intended "Indian tribes to file tribal trust mismanagement claims within six years after an accounting of the trust fund is furnished to the Tribe no matter when the mismanagement may have occurred."[129]

### C. Section 12 of ICCA Does Not Bar Pre-1946 Claims

Defendants first make the feeble contention that the Tonkawa may not rely on the Tribal Trust Accounting Statutes because Section 12 of the ICCA is not a "statute of limitations," but is "a statute of repose." That argument ignores that Congress expressly entitled Section 12 as "Limitations." A statute section's title can be used to resolve any doubt about the meaning of a statute.[130] Moreover, in the many decades that Section 12 has been construed, various courts consistently have recognized it for what it is – a statute of limitations.[131]

---

[128] 57 Fed. Cl. at 396.

[129] *Id.* at 392.

[130] *Murphy Exploration & Prod. Co. v. U.S. Dep't of the Interior,* 252 F.3d 473, 481 (D.C. Cir. 2001).

[131] *See, e.g., Te-Moak Bands of W. Shoshone Indians v. United States,* 948 F.2d 1258, 1259 (Fed. Cir. 1991) ("The limitations provision of the [ICC] Act . . . ."); *Minn. Chippewa Tribe v. United States*, 11 Cl. Ct. 534, 536 (Cl. Ct. 1987) (the ICCA's "statute of limitations"); *Sioux Tribe v. United States*, 500 F.2d 458, 476-

Second, Defendants rely on *United States v. Will*,[132] for their version of the rule that "repeals by implications are disfavored, particularly when the provision advanced as the repealing measure was enacted in an appropriations bill."[133] A more recent case more accurately states the rule as being that:

> although repeals by implication are especially disfavored in the appropriations context, . . . Congress nonetheless may amend substantive law in an appropriations statute, as long as it does so clearly.

*Robertson v. Seattle Audubon Soc'y,* 503 U.S. 429, 440 (1992).[134] "Where Congress chooses to do so, . . . we are bound to follow Congress' last word on the matter even in an appropriations law."[135]

Third, Defendants argue that the ICCA's jurisdictional limitations preclude relief sought under the APA. As noted previously, the Tonkawa assert the APA as merely one basis on which they seek relief in these actions. Defendants ignore the overriding impact of the Tribal Trust Fund Accounting Statutes on the ICCA. Under the Tribal Trust Fund Accounting Statutes, the Tribe's claims regarding their trust fund accounts have been deferred unless and until they are provided

---

79 (Ct. Cl. 1974) (the ICCA's "limitation period"); *Navajo Tribe v. New Mexico,* 809 F.2d at 1470 (the ICCA's "statute of limitations").

[132] *United States v. Will* 449 U.S. 200 (1980).

[133] Motion to Dismiss at 49.

[134] *Citing United States v. Will,* 449 U.S. 200, 222 (1980) (internal citation omitted).

[135] *City of Los Angeles v. Adams,* 556 F.2d 40, 49 (D.C. Cir. 1977). "Courts have treated appropriations measures as amendments in a number of cases." *Id.* (footnote omitted).

with accountings, notwithstanding the ICCA. Nothing in the APA changes this state of the law.

Finally, two years ago, as noted by the CFC in *Shoshone,* the government acknowledged that "claims for mismanagement of certain trust fund monies . . . may be allowable for periods pre-dating 1946."[136] The government's more tenable position in *Shoshone* is in stark contrast to its blanket position here that all pre-1946 claims are barred by Section 12 of the ICCA.[137]

### VIII.  THE TONKAWA ARE ENTITLED TO AN ACCOUNTING OF THEIR NONMONETARY ASSETS

> *The Federal duty can also be likened to the "implied trust" in common law whereby a trust is created by operation of law. Generally, such trusts are recognized by the courts on the basis of an implied intention of the parties to a transaction (resulting trust) or on the basis that recognition of a trust is necessary in order to prevent the unjust enrichment of one party who committed fraud, deception or some other wrongdoing (constructive trust). In such circumstances, the requirements and restrictions imposed on a trustee are recognized even though no formal trust document creates them.*[138]

---

[136] 71 Fed. Cl. at 177 (citing Defendant's Response to Tribes' Motion for Leave to Amend Petitions, at 6).

[137] Regarding Defendants' arguments that Tonkawa claims are barred by the ICCA under theories of relitigation / *res judicata,* Plaintiffs already have argued that the law is clear that the ICCA did not produce the requisite accountings and other relief sought in these actions. *See, e.g.,* Plaintiffs' Memorandum in Opposition to Defendants' Motion to Remand and for Stay of Litigation, at 10-11, *Ak-Chin Indian Comm. v. Kempthorne,* No. 06-2245 (D.D.C. Doc. # 22 filed Oct. 1, 2007).

[138] American Indian Policy Review Commission of the Congress of the United States, Final Report, May 17, 1977, vol. 1, page 127 (citations omitted) (emphasis added).

## A. An Adequate Accounting Must Include Non-Monetary Assets

It is axiomatic that a trust beneficiary is entitled to "information . . . reasonably necessary to enable [it] to enforce [its] rights under the trust . . . ."[139] As such, an adequate accounting is not limited to funds, but also must include non-monetary assets.[140] The Tonkawa are entitled to an accounting of their non-monetary assets.

First, the Tribe's claim is an equitable cause of action by a trust beneficiary to enforce express and implied federal statutory trust responsibilities.[141] The obligation of a trustee to provide an accounting – which includes non-monetary assets – is fundamental. Second, the Tribe's alternative claim based on 706(1) to compel an accounting of non-monetary assets falls squarely within the scope of

---

[139] Restatement (Second) of Trusts § 173, cmt. c ("Duty to Furnish Information") (1959); *Cobell VI*, 240 F.3d at 1103 ("Under traditional equitable trust principles, '[t]he trustee's report must contain sufficient information for the beneficiary readily to ascertain whether the trust has been faithfully carried out.'") (citation omitted); *Clifford v. United States*, 136 F.3d 144, 152 (D.C. Cir. 1998) (same).

[140] *See* 76 Am. Jur.2d Trusts § 378 (as a general rule, trustee must account for property or funds); 1A C.J.S. Accounting § 6 ("An accounting is essentially an equitable remedy, which arises from an obligation to account for the plaintiff's money *or property*") (emphasis added), 16 ("Equity has jurisdiction of an accounting where a fiduciary relation exists creating a duty to account for money *or property*") (emphasis added); Black's Law Dictionary (8th ed. 2004) (defining accounting as "the report of all items of property, income and expenses' prepared by the trustee for the beneficiary").

[141] Even in the *Cobell* case which involved only an accounting of funds, the Court of Appeals held that a listing of the non-monetary assets held in trust was necessary. *See Cobell VI*, 240 F.3d at 1103 ("an accounting necessarily requires a full disclosure and description of each item of property constituting the corpus of the trust at its inception" and further defining accounting "as the report of *all items of property*, income, and expenses prepared by the trustee for the beneficiary.") (citations omitted) (emphasis added).

judicial authority set forth in *SUWA* and *Cobell VI*, especially since this is a trust case.[142]

By necessity, this accounting duty falls squarely on the Defendants. **The Tonkawa do not have access to the information that would allow the Tonkawa to conduct their own accounting.** These records have been, and still are, held by the Defendants in various locations around the country.

In addition, this Court is authorized to compel an accounting of all Tonkawa assets, including non-monetary assets, under Section 706(1). It is fundamental that an adequate accounting necessarily includes an accounting of non-monetary assets. Thus, under *SUWA* and *Cobell VI*, this Court is authorized to, indeed required to, compel an accounting of the Tribe's non-monetary assets.

### B. The Tonkawa Were Not Required to Exhaust Administrative Remedies

Defendants next contend that the Tribe's claim for an accounting of non-monetary assets is barred by the failure to exhaust administrative remedies. This argument is unavailing for two reasons. First, the Tonkawa are trust beneficiaries and thus have access to Courts of equity to enforce trust obligations owed to them.[143] Second, the information subject to the regulations cited by Defendants is wholly different in scope and nature from the information the Tonkawa seek

---

[142] *Cobell v. Norton*, 391 F.3d 251 258 (D.C. Cir. 2004) ("The district Court, then, retains substantial latitude, much more so than in a typical agency case, to fashion an equitable remedy because the underlying lawsuit is both an Indian case and a trust case in which the trustees have egregiously breached their fiduciary duties.")

[143] Scott on Trusts § 199, at 203-04 (4th ed. 1988).

through an accounting of non-monetary assets. In other words, there are no applicable administrative procedures that the Tonkawa could have exhausted prior to filing the instant action.

The information that is the subject of the Tribe's accounting claim is all-encompassing. As discussed, *supra*, a trust beneficiary is entitled to obtain from its trustee all-encompassing information to enable it to enforce its rights under the trust.[144] The Tonkawa ask for an accounting that includes both trust funds and the trust assets from which the funds were derived. Without a full accounting of the underlying trust assets, it will be impossible for the Tonkawa to determine whether the Defendants have properly accounted for all trust income.

The Defendants picked an arbitrary date of 1972 for the beginning of the TRP Reports. But there is no verification that prior year's beginning balance was correct. On a common-sense level, accounting for tribal assets is no different than balancing a checkbook: without an accurate starting balance, the final reconciliation is untrustworthy.

Quite apart from Defendants' obligation under trust law to furnish information about trust assets to the Tonkawa, a set of regulations requires the Bureau of Indian Affairs ("BIA") to maintain information and provide title status

---

[144] *See Restatement (Second) of Trusts* § 173 ("Duty to Furnish Information") (1959); *Clifford*, 136 F.3d at 152; *Cobell VI*, 240 F.3d at 1103. Defendant owes this strict duty to the Tonkawa, as beneficiaries, *even in the absence of a request*. Restatement (Second) of Trusts § 173 cmt. d (emphasis added).

reports regarding tribal land.[145] Defendants take the untenable position that these run-of-the-mill regulations setting forth procedures for BIA merely to provide "title status reports" to "those persons authorized by law to receive such information" establishes an administrative mechanism for the Tonkawa to obtain an accounting of non-monetary assets requested by the Tonkawa in this action.[146]

This argument is patently incorrect. The disclosure obligation of these regulations is not a means for obtaining a comprehensive accounting of non-monetary assets in a trust. Rather, the regulation only would obligate BIA to provide a title status report containing the most rudimentary summary level information not at all equal to the comprehensive accounting of nonmonetary assets the Tonkawa seek here. What the Tonkawa seek is far different than a title status report. The comprehensive accounting of non-monetary assets is the lifeblood of the trust. The Tonkawa are entitled to such an accounting. Thus, requiring the Tonkawa to exhaust these so-called "administrative remedies" would be pointless and provide them with wholly inadequate relief.[147]

Moreover, the stated purpose and scope of the regulations cited by

---

[145] *See generally* 25 C.F.R. § 150.1-150.11.

[146] 25 C.F.R. § 150.8.

[147] *Coit Independence Joint Venture v. Fed. Sav. & Loan Ins. Corp.*, 489 U.S. 561, 587 (1989) ("Administrative remedies that are inadequate need not be exhausted.") (citing *Greene v. United States*, 376 U.S. 149, 163 (1964); *Smith v. Ill. Bell Tel. Co.*, 270 U.S. 587, 591-92 (1926)); *Randolph-Sheppard Vendors of Am. v. Weinberger*, 795 F.2d 90, 107 (D.C. Cir. 1986) ( "The administrative process is inadequate where … the relief [the agency] will provide through its action will not be sufficient to right the wrong . . .").

Defendant is merely to "set forth authorities, policy and procedures governing the recording, custody, maintenance, use and certification of title documents, and the issuance of title status reports for Indian land."[148] It is not to provide an administrative mechanism for the tribal beneficiaries to obtain information about their own assets. Defendants cite no other regulation requiring the BIA to provide information on non-monetary trust assets.

The cases cited by Defendant in support of their argument scarcely merit discussion. Nearly all involve mechanical application of the exhaustion of the administrative remedies doctrine in cases where plaintiffs plainly failed to seek available remedies at the administrative level. In *Coosewoon v. Meridian Oil Co.*,[149] for example, the plaintiffs sought cancellation of an oil and gas lease under a particular DOI regulation which provided a specific mechanism for the cancellation of such leases.[150] Thus, in stark contrast to the case at hand, in *Coosewoon*, there was a perfect correlation between the relief sought and the remedy available under the regulation.[151]

The obligation to provide sufficient information for a trust beneficiary to

---

[148] 25 C.F.R. § 150.1; *see also Harrison v. Emerald Outdoor Adver., LLC (In re Emerald Outdoor Adver., LLC)*, 444 F.3d 1077, 1082-83 (9th Cir. 2006) (emphasizing the public notice aspect of the regulations).

[149] *Coosewoon v. Meridian Oil Co* 25 F.3d 920 (10th Cir. 1994)

[150] *Id.* at 924-925.

[151] *Id.*; *see also Davis v. United States*, 199 F. Supp.2d 1164, 1179 (W.D. Okla. 2002), *aff'd* 343 F.3d 1282 (10th Cir. 2003) (cited by Defendant and dismissing plaintiffs' claims seeking to obtain Certificates of Degree of Indian Blood because of their failure to follow the prescribed procedure).

determine whether the trustee has discharged its duties exists independently of, and is not coextensive with, the obligations created by the regulations cited by Defendant. As such, the administrative procedure for obtaining information under 25 C.F.R. § 150.8 is both wholly inapplicable and inadequate to meet the Tribe's needs. For these reasons, the Tonkawa were not required to exhaust administrative remedies and this Court should exercise jurisdiction over their claims for an accounting of non-monetary assets.[152]

## IX. CONCLUSION

The Tonkawa Tribe of Oklahoma respectfully requests this Court deny the Defendants' Motion to Dismiss and grant the Tonkawa such further and additional relief, both at law and in equity, to which the Tonkawa may be entitled.

DATED: November 17, 2008                         Respectfully Submitted,

*s/ Kennis M. Bellmard, II*
Kennis M. Bellmard, II, OBA #13965
David Pomeroy, OBA #7209
Michael D. McMahan, OBA #17317
Jennifer Henshaw McBee, OBA #19170
ANDREWS DAVIS
A PROFESSIONAL CORPORATION
ATTORNEYS AND COUNSELLORS AT LAW
100 North Broadway Avenue, Suite 3300
Oklahoma City, OK 73102
Telephone: (405) 272.9241
Fax: (405) 235.8786
www.andrewsdavis.com
ATTORNEYS FOR PLAINTIFF
TONKAWA TRIBE OF OKLAHOMA

---

[152] *Randolph-Sheppard Vendors of Am.*, 795 F.2d at 107 (exhaustion may be excused where administrative remedies are inadequate)*; Avocados Plus Inc. v. Veneman,* 370 F.3d 1243, 1247 (D.C. Cir. 2004) (same).

## CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of November, 2008, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants and mailed a copy via US Postal Service to the Non-ECF registrants:

       Terry M. Petrie
       Jared S. Pettinato
       Anthony P. Hoang
       United States Department of Justice
       Environment and Natural Resources Division
       Natural Resources Section
       1961 Stout Street, 8th "Floor
       Denver, Colorado 80294
       P.O. Box 663
       Washington, D.C. 20044-0663
       ATTORNEYS FOR DEFENDANT

       OF COUNSEL:

| | |
|---|---|
| Shani N. Walker | Thomas Kearns |
| Joshua A. Edelstein | Office of the Chief Counsel |
| Office of the Solicitor | Financial Management Service |
| United States Depart of the Interior | United States Dept of Treasury |
| Washington, D.C. 20240 | Washington, D.C. 20227 |

                                *s/ Kennis M. Bellmard II*
                                Kennis M. Bellmard, II

213907.1